UNITED STATES, Appellee

v.

ALFRED BLUE, Private E-1, U. S. Army, Appellant

3 USCMA 550, 13 CMR 106

No. 2778

Decided December 18, 1953

MAJ Edwin Doran, U. S. Army, and 1ST LT Justin L. Vigdor, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Ezra B. Jones, Jr., U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty by general court-martial of having committed two offenses proscribed by Article 134, Uniform Code of Military Justice. The only one of importance to this decision was charged as an unlawful and wrongful possession, with intent to deceive, of a false military pass. The court-martial sentenced accused to be discharged from the service with a bad conduct discharge, to forfeit all pay and allowances, and to be confined at hard labor for one year. The convening authority, after disapproving the element of intent to deceive, approved the remaining findings and sentence, but suspended execution of the bad conduct discharge until accused's release from confinement or completion of appellate review, whichever occurred on the later date. The board of review affirmed, and accused's petition to this Court for review was granted to determine the legality of the sentence.

On June 26, 1953, which was subsequent to the date we granted review, the unexecuted portion of accused's sentence was suspended by the Secretary of the Army until publication of the results of the affirming action, at which time the suspended portion of the sentence was to be remitted. On that same date accused was restored to duty to

complete his current enlistment. On August 21, 1953, he was discharged from active duty and transferred to the United States Army Reserve of the North Carolina Military District for a period of five years. The transfer was general under honorable conditions.

Prior to arguments on the merits of the appeal, appellate government counsel filed a motion to dismiss accused's petition for review contending that because of the action of the Secretary of the Army, accused was no longer subject to the provisions of the Code and that no justiciable question of law remained to be decided. We deny the motion to dismiss, without considering the effect of the Secretary's order on the rights of the parties for the reason that a decision on the issue raised is of importance to all of the services.

The specification with which we are concerned is as follows:

"In that . . . [accused] . . . did, at Tangnae, Korea, on or about 12 November 1952, wrongfully and falsely have in his possession with intent to deceive a certain instrument purporting to be a military pass in words and figures as follows: . . . Then well knowing the same to be false."

After the court-martial returned a finding of guilty as charged, the law officer instructed the members that the maximum confinement which could be imposed for both offenses was three years and three months. Based on that maximum limit, the court-martial imposed, in addition to accessories, a sentence of confinement for one year. While, as previously stated, the convening authority disapproved that portion of the finding which found an intent to deceive, he failed to make any modification in the sentence adjudged by the court-martial. It is accused's contention that by disapproving a portion of the findings the convening authority reduced the degree of the crime to a level which made the one year term of confinement excessive. He concedes that the finding, as approved, leaves him convicted properly of a simple disorder but he asserts that the greater offense of possession of a false pass with intent to deceive cannot be used to support the sentence.

Both of the foregoing offenses are proscribed by Article 134 of the Code commonly known as the general article. That article provides that upon conviction for an offense included thereunder the accused may be punished at the discretion of the court-martial. The Table of Maximum Punishments provides that three years confinement is the maximum for the more serious offenses growing out of the misuse of passes while for a simple disorder not more than four months may be imposed. In addition, Section 127c of the Manual for Courts-Martial, United States, 1951, provides:

"The punishment stated opposite each offense listed in the Table of Maximum Punishments is hereby prescribed as the maximum punishment for that offense, and for any lesser included offense if the latter is not listed, and for any offense closely related to either if not listed. If an offense not listed in the table is included in an offense which is listed and is also closely related to some other listed offense, the lesser punishment prescribed for either the included or closely related offense will prevail as the maximum limit of punishment."

In order to apply the above quoted provision the first step is to determine whether the particular offense is listed in the Table. If it is we need not pursue the matter further. Appellate government counsel contend that the identical offense is found on page 226 of the Manual. The crime is there described in the following language: "False or unauthorized military or official pass, permit, or discharge certificate, making, using, altering, possessing, selling, or otherwise disposing of." Appellate defense counsel on the other hand contend that while the language used to list the offense does not include the words "with intent to deceive" their absence is of no material importance as the listing does not purport to include all elements of the offense, and that when the approved offense is evaluated properly it is a sim-

ple disorder which is listed in a different place.

We are forced to conclude that failure to include intent to deceive in the listing cannot be interpreted ▪ as an intent to eliminate that element from the substantive offense. The listing includes many variations in the way in which the offense may be committed and the intent to deceive is not principally important in all. Furthermore, it was not intended to define accurately the offenses listed in the Table. That conclusion is demanded by the following language found in Paragraph 127c, pages 217–218 of the Manual:

"The headings of the table and the descriptions of offenses therein are condensed for convenience of arrangement and are intended solely to identify the portions of this manual and the offenses to which they pertain (without defining any such offense). In the case of discrepancy between a heading or description of an offense in the table and any other part of this manual, such other part shall be controlling. The descriptions of offenses do not purport to define either the elements of proof of (ch. XXVIII) or the form of pleading for (app. 6) the various offenses."

The foregoing paragraph permits us to reach the conclusion that the offense mentioned in the form specification and the one listed in the Table are identical. We are satisfied that the dropping of the phrase "with intent to deceive" in the Table was· to skeletonize the description and to permit listing the offenses with the fewest possible words. Such being the case we are faced with a determination of whether the offense approved by the convening authority is a lesser included one which is not listed specifically in the Table or whether it is a disorder. If the former, the penalty which can be imposed may equal that for the greater offense. If the latter, the punishment cannot exceed four months in confinement.

The Manual for Courts-Martial, 1951, contains no discussion of the offense of wrongful possession of a false pass, with or without intent to deceive. However, sample form No. 138 in Appendix 6, at page 490, is a cover-all specification for the various offenses relating to military passes. In United States v. Karl, 3 USCMA 427, 429, 12 CMR 183, 185, we held that intent to deceive was an element which was associated in the form specification with possession of the pass. We there stated:

". . . However, the form is a cover-all for various types of offenses and it must be considered in the light of the offense committed as the several offenses involving unauthorized military or naval passes are different, and all do not require fraudulent intent. A close examination of the sample form discloses that the phrase *'with intent to defraud or deceive' is bracketed in such a manner as to be required only in cases where it is alleged that the accused used, or had in his possession, a false or unauthorized pass,* and is apparently not necessary where the specification alleges the sale of a pass. . . . ." (Emphasis supplied)

Implicit in that finding is the suggestion that in order to place possession of a false pass on the same plane of gravity with other offenses included in the form specification an intent to deceive must be present. We must now go one step further and determine whether the absence or presence of that intent make a difference in the degree of the offense. We believe previous service cases will assist us in arriving at the answer.

In United States v. Barone, CM 261917, 40 BR 349, decided in September, 1944, an Army board of review held a specification, which sought to allege an offense of possession of a false pass, fatally defective because it did not state the possession was with a wrongful or fraudulent intent or attended by other wrongful or illegal circumstance. The important principle announced in that case may be found in the following quotation:

"The accused is not thereby charged with having made the false and unauthorized pass, but only with having it in his possession, and there is no allegation that this possession was

wrongful or with wrongful or fraudulent intent, nor are any other words used in the Specification which characterize the possession of the pass in question as either illegal or wrongful. It is not *per se* unlawful or wrongful to possess a forged or false pass. A variety of factual situations readily present themselves to mind where such possession would be perfectly legal and proper. In order to constitute an offense under the provisions of Title 18, Sec. 132, U.S.C. 1940 ed., possession of a false, forged, or altered pass must be accompanied by a 'wrongful or fraudulent intent.' Likewise, *in order to constitute an offense cognizable under the Articles of War such possession must be with wrongful or fraudulent intent, or be attended by other circumstances making it wrongful or illegal.* The Specification under discussion, in order to have been sufficient to allege an offense, should have used appropriate language, branding the possession by the accused of the false and unauthorized pass as wrongful or illegal or should have alleged facts from which the wrongful or illegal nature of the possession would be apparent. . . . " (Emphasis supplied)

It is to be noted that in the Barone case the board of review found no criminality alleged and, therefore, it was held no offense had been stated. Subsequent cases emphasize that point. In August 1949, an Air Force board of review in United States v. Simmons, ACM S–22, 2 CMR (AF) 99, first set out the rule that wrongful possession of a spurious pass without intent to deceive was a mere disorder. There the accused was charged with wrongful possession of a certain instrument purported to be an Air Force pass. In reaching the conclusion it did, and in discussing the rationale of the Army board of review in the Barone case, that board stated:

"We believe that a proper statement of the principle there enunciated is that an allegation of the mere possession of a forged or unauthorized pass is insufficient to state an offense. *In addition to the averment of possession, there must be appropriate language branding that pos-*

session of the pass as wrongful or unlawful or describing it with similar words importing criminality (MCM 1949, par 29a), *and* the allegation of facts from which such nature of the possession is apparent. The proof, then, must establish the allegations beyond a reasonable doubt to sustain a conviction.

"Even though these tests of pleading and of proof be met, any offense not alleged in words conforming or measuring up to the provisions of the Federal Statute (Title 18, USC 1948 ed § 499, *supra*), or to Model Specification 160, Page 330, Manual for Courts-Martial 1949, or in which the proof does not sustain the element of fraudulent intent, will not support the three-year punishment provided in the Table of Maximum Punishments (MCM, 1949, par 117c). . . . *Neither are we concerned here with the three-year limitation of punishment fixed by the Table of Maximum Punishment (MCM, 1949, par 117c), upon the possession, with intent to defraud, or upon the making, altering, selling, or otherwise disposing of false, forged, or unauthorized furloughs, discharge certificates, or naval, military, or official passes. What we are concerned with is the wrongful possession of a spurious pass or of a valid pass issued to someone other than the accused for the purpose of leaving the reservation and getting to or remaining in town. Such act must be regarded as a simple military disorder."* (Emphasis supplied)

Although the evidence established that Simmons had, on three separate occasions, represented himself to be the individual whose name appeared on the pass, the board of review, nevertheless, held that the finding of guilty did not encompass a finding of intent to deceive and, therefore, only a sentence of four months confinement and forfeiture of two-thirds pay per month for the same period could be supported. We do not pass on the merits of that portion of the opinion; we merely point out that a service has limited the sentence to four months in a case which on its facts

appears to be a more flagrant abuse of the pass privileges.

Again in August 1949, in United States v. Love, ACM S–57, 2 CMR(AF) 129, an Air Force board of review considered substantially the same question. It followed the rule laid down in the Simmons case and in the course of the opinion stated:

". . . The same is true as to Additional Charge III and its Specification, inasmuch as the allegations and proof are legally sufficient to establish a military disorder, within the rule announced in ACM S–22, Simmons, and thus will support a maximum permissible punishment of confinement at hard labor of four months and a forfeiture of two-thirds of the soldier's base pay and pay for length of service per month for a like period. . . ."

In United States v. Faraco, CM 347413, 1 CMR 356 (September 1951), the accused was charged with wrongfully, unlawfully and falsely having in his possession, with intent to defraud, a certain instrument purporting to be an official military order knowing the same to be false. He was found guilty as charged, but, as in the case at bar, the convening authority disapproved the portion of the finding dealing with fraudulent intent. The Army board of review, while not departing from the early Barone rule, followed the Air Force authorities and concluded the offense was a disorder. We quote from that opinion at page 364:

"However, the convening authority disapproved that portion of the specification as found the accused guilty of fraudulent intent. The specification as thus modified finds the accused guilty of wrongfully, unlawfully, and falsely having in his possession a certain instrument purporting to be an official military order knowing it to be false and the question is whether this finding constitutes an offense under the Articles of War.

"Mere possession of a false pass is not per se wrongful or unlawful (CM 261917, Barone, 40 BR 349). Although deciding that no offense was charged in a specification alleging

that the accused had an unauthorized and false pass in his possession, the board therein held:

'. . . in order to constitute an offense cognizable under the Articles of War such possession must be with wrongful or fraudulent intent, or be attended by other circumstances making it wrongful or illegal. The Specification under discussion, in order to have been sufficient to allege an offense, should have used appropriate language, branding the possession by the accused of the false and unauthorized pass as wrongful or illegal or should have alleged facts from which the wrongful or illegal nature of the possession would be apparent.'

"Although the mere possession of a false pass may not be sufficient to state an offense, in this case, in addition to the averment of possession, there is language describing that possession as wrongful and unlawful and further describing the accused's criminal state of mind in that the accused knew the pass to be false. It is therefore the opinion of the board of review that such conduct is prejudicial to good order and military discipline and constitutes a violation of Article of War 96 (ACM–S 22, Simmons, 2 CMR(AF) 99, 105–106; ACM–S 57 Love, 2 CMR(AF) 129, 130)."

In United States v. Nichols, NCM 86, 3 CMR 482 (April 1952), a Navy board of review considered a case where the accused was charged with wrongfully having in his possession, with intent to deceive, an official pass knowing the same to be unauthorized. The convening authority again found no intent to deceive but approved a finding of guilty of possession of an unauthorized official pass. That board of review appears not to have been willing to adopt the views announced by the boards from the other services, as the opinion is to the effect that a disapproval of the element of intent to deceive by the convening authority leaves no recognizable offense which could be approved. That opinion states at page 483:

"This action is tantamount to a dis-

approval of the Court's finding of guilty of Charge III and its specification. Mere possession of an unauthorized official pass does not constitute an offense within the framework of that charged against this accused.

"The specification here pleaded, which follows the prescribed form (app. 6c (138)), alleges a violation of Article 134, UCMJ, an offense, not capital, denounced by federal law (18 US Code 499; and see 213d, MCM, 1951). To support conviction of this offense, the evidence must show that the accused wrongfully had the alleged pass in his possession; that such possession was with intent to deceive; and that the accused well knew that such pass was unauthorized. The evidence in this case, as indicated by the finding approved by the convening authority, as well as the record, shows nothing more than that the accused had in his possession an unauthorized pass, which, in and of itself, is not sufficient to support the wrongful intent to deceive alleged in the specification, and which wrongful intent is essential to a finding of guilty. The convening authority, therefore, should have set aside the finding of the court on Charge III and its specification for insufficiency of evidence. Cf. C.M.O.'s 1, 1944, 31; 1, 1944, 97; 3, 1944, 556."

A recapitulation of the service holdings shows that the Army and Air Force have, since 1949, followed the rule that possession of a false pass, absent any intent to deceive, constitutes an offense no greater than a disorder. The Naval service has failed to go that far. However, there is little question in our minds that the unlawful and illegal possession of a false pass, with knowledge of its falsity, is a neglect or a disorder which operates to the prejudice of good order and discipline in the service. It is not always possible to apprehend a possessor at the time he is using a false pass but his only purpose in having it in his possession is to use it when a necessity to hide his identity is of importance. There may be rare instances when the holder is in possession as a mere conduit through which the document is returned to proper military officials, but the probability of that situation arising is extremely remote, and prosecution would be rare indeed. Conceding that bare possibility, the potentiality for harm to the service from military personnel knowingly and unlawfully carrying false means of identification is not so insignificant as to warrant a holding that there is no offense. The only purpose of a fraudulent pass is to deceive and order and discipline can hardly thrive when military personnel are carrying the tools to aid and assist in the deception. For the foregoing and other reasons not necessary to mention now, we affirm the Army and Air Force rule.

It is distinctly arguable that the offense with which we are now concerned is greater than a mere disorder. However, neither the Congress nor the Executive considered increasing the penalty nor changing the elements of the offense as the 1951 Manual makes no substantive changes in the elements, as they have been identified in early cases, in the form specification, or, in the punishment. The offense is well known in the armed services and had the codifiers of the Manual concluded the previous rule was inappropriate, a change would have undoubtedly been made.

Having concluded to go as far, but not further than, the rule of the Simmons case, the maximum sentence which could be adjudged for possession of a false pass is four months. The maximum sentence for the drunkenness offense is three months, making a total maximum sentence of seven months for the offenses of which accused stands convicted. The sentence being illegal to the extent of five months, we cannot affirm.

The record is returned to The Judge Advocate General of the Army for reference to a board of review for reconsideration of the sentence in the light of the views we herein express.

Chief Judge QUINN and Judge BROSMAN concur.