UNITED STATES, Appellee

v

ROBERT J. OAKLEY, Private, U. S. Army, Appellant

11 USCMA 529, 29 CMR 345

No. 13,710

Decided June 17, 1960

*First Lieutenant Richard P. Nee* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig.*

*First Lieutenant George J. Miller* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy* and *First Lieutenant Stuart Goldstein.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused pleaded guilty to the larceny of a $20.00 money order and wrongful possession of another's identification card, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively. He was sentenced to a dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for one year, and reduction to the grade of Recruit E–1. Pursuant to a pretrial understanding, the convening authority approved the sentence with the exception of the period of confinement, which he reduced to six months. A board of review in the office of The Judge Advocate General of the Army reduced the means of punitive separation to a bad-conduct discharge but otherwise affirmed, and we granted accused's petition for review to answer two questions raised by him. They seek a determination of whether an instruction given by the law officer on the maximum punishment for one offense was correct and whether the two offenses were multiplicious for sentencing purposes.

In the early morning of May 11, 1959, the accused rifled the clothing of the victim and removed a wallet and its contents. The wallet contained numerous items, but those important in the case at bar were the above-mentioned money order and a United States Armed Forces identification card issued to the victim. On May 29, 1959, while the accused was performing his duties as a guard, he was approached by a Korean prostitute. The accused was without money, but the woman agreed to take his Armed Forces identification card as security in payment for her services. After completion of the meretricious act, the accused gave the female the victim's identification card. When the prostitute later noticed that she had been bilked, she sought to locate the accused and this brought to light the instant offenses.

The first issue arises out of the instruction on the maximum punishment imposable for accused's wrongful possession of the Armed Forces identification card. It is the contention of defense that the specification states merely a simple disorder which is punishable by a maximum of four months' confinement at hard labor and partial forfeitures for a like period of time. If this contention is correct, then the law officer misinstructed the court-martial, for he advised the members that the maximum sentence for this offense was six months with partial forfeitures.

The rule for determination of the

maximum punishment imposable in this instance is found in paragraph 127c, Manual for Courts-Martial, United States, 1951, which provides as follows:

"Offenses not listed in the table, and not included within an offense listed, or not closely related to either, remain punishable as authorized by the United States Code (see, generally, Title 18) or the Code of the District of Columbia, whichever prescribed punishment is the lesser, or as authorized by the custom of the service."

A reference to the Table of Maximum Punishments shows no offense involving identification cards is listed. However, the accused argues that possession of a false or unauthorized military pass is listed and that in United States v Blue, 3 USCMA 550, 13 CMR 106, we held that the wrongful possession of a pass without an intent to deceive was a lesser included offense of the one listed and that it was only punishable as a disorder. Accused argues that by analogy that case is on all fours with this and dispositive of the issue herein. However, we disagree, for ██ we conclude this offense is unrelated to and not included in crimes involving passes. In that connection, there is another provision of the Manual which sheds some light upon the punishment for a lesser included offense. Paragraph 127c also provides:

"The punishment stated opposite each offense listed in the Table of Maximum Punishments is hereby prescribed as the maximum punishment for that offense, and for any lesser included offense if the latter is not listed, and for any offense closely related to either if not listed. If an offense not listed in the table is included in an offense which is listed and is also closely related to some other listed offense, the lesser punishment prescribed for either the included or closely related offense will prevail as the maximum limit of punishment."

We reached the conclusion in Blue that his offense of possessing a false pass was a disorder, but we did not consider the offense as being strictly included within those listed for, had we done so, under the terms of the Manual the maximum penalty would have been confinement for three years, not four months. Obviously, accused does not desire us to hold only that this crime is lesser included to the listed offenses, for that would be to his detriment. Principally, he wants us to hold the two cases are identical for in the Blue case we concluded that the mere possession of a pass without intent to deceive was a minor delict and that the four months' sentence provided for in the Table of Maximum Punishments was appropriate and the one intended for that sort of conduct. We were supported in that holding by prior service cases. However, we have a different problem in the case at bar, for we are certain Congress intended to make this a more serious case than a disorder as it set out the punishment which could be imposed for this particular offense. Apropos to this situation is this comment we made in Blue:

"It is distinctly arguable that the offense with which we are now concerned is greater than a mere disorder. However, neither the Congress nor the Executive considered increasing the penalty nor changing the elements of the offense as the 1951 Manual makes no substantive changes in the elements, as they have been identified in early cases, in the form specification, or, in the punishment. The offense is well known in the armed services and had the codifiers of the Manual concluded the previous rule was inappropriate, a change would have undoubtedly been made."

The necessity for doubt in this case is removed by the Congressional action of enacting a statute which is subsequently quoted in this opinion.

Having concluded this case is not controlled by Blue and that the alleged offense is neither closely related nor included within a listed crime, the rule of the Manual requires that we look to the United States Code or District of Columbia Code. We have not found,

**531**

and our attention has not been directed to, any provision of the District of Columbia Code which defines any offense such as is herein involved. However, section 701 of Title 18, United States Code, provides that:

"Whoever manufactures, sells, or possesses any badge, identification card, or other insignia, of the design prescribed by the head of any department or agency of the United States for use by any officer or employee thereof, or any colorable imitation thereof, or photographs, prints, or in any other manner makes or executes any engraving, photograph, print, or impression in the likeness of any such badge, identification card, or other insignia, or any colorable imitation thereof, except as authorized under regulations made pursuant to law, shall be fined not more than $250 or imprisoned not more than six months, or both. June 25, 1948, c. 645, 62 Stat. 731."

This is the provision apparently relied on by the law officer, for the maximum punishment imposable under its provisions is the measuring rod used by him. We believe he was entirely correct in using this particular statute as the wording of the section punishes the precise offense committed by the accused. When that situation exists, we should pay heed to the Congressional mandate rather than rely on the general provisions of Article 134 and the punishments which must be ascertained by analogy. Particularly is this true when there is a reason for differentiating offenses of the same general class according to gravity. Passes issued by the respective services serve one purpose and armed forces identification cards serve others far more important. The latter are issued to identify the bearer and grant him many rights and privileges, while the former is of much more limited use. Included in the privileges of identification cards is security clearance for entrance into many areas which are prohibited to others not members of the armed services. Also included are such perquisites as the right to purchase from commissaries, sales, and exchange stores. Furthermore, many financial transactions are made possible by the possession of these cards, and both military and civilian sources place great reliance on their possession. Accordingly, they have a potential for serious consequences to the services if misused, and it is to discourage illegal interference with the normal operations of the armed forces which caused Congress to define and specifically set the punishment for this crime. Certainly we believe the members of Congress were well aware of the proposition that the possibility for harm from the wrongful possession of these cards is greater than would be the case if the document illegally possessed was a pass. Therefore, we conclude that those who improperly deal with identification cards should be punished under the terms of the United States Code rather than the general provision of paragraph 127c of the Manual. For the foregoing reasons, we hold the law officer used a correct standard in his instructions on maximum punishment.

The next issue raises the question of whether the record shows the alleged crime to have arisen out of a single transaction and to be punishable as a single offense, or whether there are two offenses which may be punished separately. It is clear that if the allegations of the specifications are considered without reference to the facts, two separate offenses are alleged. The first specification alleges the larceny to have been committed on May 11, 1959, while the wrongful possession of the identification card was alleged to have occurred on the 28th day of May 1959. Appellate defense counsel, however, call our attention to the facts which were stipulated and made part of the record and contend that when the accused stole the wallet, he came into unlawful possession of the identification card and that the crime was of necessity completed at the time of taking. Substantially, it is his contention that the facts bring this case within the doctrine of United States v Littlepage, 10 USCMA 245, 27 CMR 319. The particular portion of that opinion relied upon by him is this:

"Abstract consideration of the ele-

532

ments of the offenses indicates that each requires a finding of fact not required for the other. See People v Freedman, 111 Cal App 2d 611, 245 P2d 45. However, this Court has reiterated that the fundamental rule is that the accused shall 'not be twice punished for the same offense.' United States v Posnick, 8 USCMA 201, 203, 24 CMR 11. In applying that rule we held that when evidence, sufficient for conviction under one charge, will also convict under another, the two offenses are not separately punishable. United States v Modesett, 9 USCMA 152, 25 CMR 414; United States v Dicario, 8 USCMA 353, 24 CMR 163; United States v Brown, 8 USCMA 18, 23 CMR 242."

While in the case at bar wrongful possession of the identification card was effectuated at the time ▉▉▉▉▉▉ the accused obtained possession of the wallet, that is the beginning of the crime alleged and not necessarily the end. Had the Government alleged the crime as the theft of the identification card, the contention might be valid but we are here concerned with possession some seventeen days after the larceny. As previously stated, Congress has seen fit to pass legislation proscribing the wrongful possession of identification cards. We generally outlined the reasons for making this offense punishable and the purpose of the legislation is to prevent the serious consequences which may flow from the wrongful use of the identification card. The probability of damage to the services continues to exist so long as the card is illegally possessed. In view of the statutory prohibition and the governmental function to be protected, it can be said that such cards take on the properties of contraband, and their possession at any time is unlawful. In this sense the offense is continuing, and prosecution is not barred merely because an accused is tried for an allied offense involving illegal acquisition of other property taken at the same time. Under that theory, a thief who possessed counterfeit money would be insulated from punishment for its possession if he had been tried for larceny of other goods which were stolen at the same time as the spurious contraband money. We do not believe that to be the law. Moreover, when we use other tests for separability, we reach the same result. If we rely on the one set out in paragraph 76a(8) of the Manual, we find that wrongfully possessing an identification card requires proof of an element not needed to make out the crime of larceny, and, conversely, larceny requires the proof of an element not necessary in establishing wrongful possession. Using the same evidence test, unless the evidence sufficient for a conviction of larceny of a money order will also convict for wrongful possession of a pass some substantial period later, then the two offenses are separately punishable. A statement of the evidence should prove the inapplicability of the last mentioned test in the case at bar. Proof of the larceny on May 11 would not prove possession of the card some seventeen days later, and proof of possession on the last date would not establish larceny at an earlier time. Finally, by the one act or any other recognized test, the offenses are separately punishable. Accordingly, there is no multiplicity and the instructions on sentence given to the court-martial members were correct.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree with my brothers that the proper measure of punishment for the offense of wrongful possession of an armed services identification card, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934, is contained in 18 USC § 701. I am unable to join them in their conclusion that the charges in this case are not multiplicious.

Pursuant to his plea, the accused was found guilty of larceny, in violation of Code, supra, Article 121, 10 USC § 921, and wrongful possession of an armed services identification card, in violation

of Code, supra, Article 134. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, reduction to the lowest enlisted grade, and confinement at hard labor for one year. As a result of the pretrial agreement in the case, the convening authority reduced the confinement portion of the sentence to six months. The board of review mitigated the dishonorable discharge to a bad-conduct discharge, but otherwise approved the sentence. We granted accused's petition for review on the issues of multiplicity and the maximum limitation of punishment applicable to the offense of wrongful possession.

Stipulated evidence establishes that the accused stole his victim's wallet on May 11, 1959, together with its contents. The latter included a money order and an armed services identification card. He sold the money order and retained the identification card in his possession until on or about May 29, 1959, at which time he utilized it as a pledge with a Korean prostitute. He was separately charged with larceny of the money order on May 11 and wrongful possession of the identification card on May 28. The law officer advised the members of the court-martial that the offenses were separate for purposes of determining an appropriate sentence.

This Court has repeatedly pointed out that thefts occurring at the same time and place constitute but one larceny. United States v Florence, 1 USCMA 620, 5 CMR 48; United States v Taylor, 6 USCMA 289, 20 CMR 5. We have also adopted the rule that only a single theft is committed when the thief asports one article which contains other items, as in the case of a purse, wallet, or letter. United States v Dicario, 8 USCMA 353, 24 CMR 163. It seems clear, therefore, that this accused, for the theft of the money order and the card, could have been charged with only one larceny. My brothers apparently believe the result should be different when he chose to retain in his possession a particular item of the stolen property. It appears to me that the distinction thus drawn is artificial, for accused's larceny and wrongful possession of the card occurred at the same time. See United States v Whitesell, 17 CMR 726. Moreover, they involved the same proof.

In United States v Brown, 8 USCMA 18, 23 CMR 242, and United States v Dicario, supra, we pointed out that offenses are not separate if the same evidence is used to establish guilt of both crimes. In the latter case we noted, over Judge Latimer's dissent, at page 361:

"... In other words, proof of the theft of the contents is sufficient to establish proof of the theft of the letter in which they were contained. When such similarity of proof exists in regard to a single act committed by the accused, the offenses are not separately punishable."

Under the law of this Court, it appears clear to me that proof that accused possessed his victim's identification card on May 29, 1959, or before, tends to establish he stole the card on May 11, 1959, as well as the wallet and its other contents. United States v Hairston, 9 USCMA 554, 26 CMR 334; United States v Ball, 8 USCMA 25, 23 CMR 249; United States v Moten, 6 USCMA 359, 20 CMR 75. The mere passage of time between the taking of property and its discovery in the possession of the accused does not destroy the inference arising from the latter fact. It merely diminishes its weight. United States v Moten, supra, at page 365. The occasion will, of course, arise when possession is so far distant from the taking that it becomes irrelevant. Here, the elapsed time is not sufficient to destroy the basis for the inference. Indeed, I thought that to be the nub of Judge Latimer's argument in *Moten*, supra, for he there states, at page 369:

"... It is true enough that the possibilities of an innocent explanation may be increased as time marches on, but to say that 51 days is so long a period of time that, as a matter of law, the property *could not possibly* be considered as recently stolen is contrary to the opinion of many well-recognized authorities."

In sum, absent the plea of guilty, the prosecution could have relied upon ac-

cused's possession of the identification card to prove his guilt of the larceny. Thus, invocation of the principles enunciated in United States v Brown and United States v Dicario, both supra, is demanded. As was stated in United States v Littlepage, 10 USCMA 245, 27 CMR 319, at page 247:

> "Abstract consideration of the elements of the offenses indicates that each requires a finding of fact not required for the other . . . . However, this Court has reiterated that the fundamental rule is that the accused shall 'not be twice punished for the same offense.' United States v Posnick, 8 USCMA 201, 203, 24

CMR 11. In applying that rule we held that when evidence, sufficient for conviction under one charge, will also convict under another, the two offenses are not separately punishable. United States v Modesett, 9 USCMA 152, 25 CMR 414. . . ."

I would reverse the decision of the board of review. In view of my conclusion that the charges are not separately punishable, it follows that the accused agreed to plead guilty in return for reduction of the sentence to the legally permissible maximum. Such an agreement is unconscionable, and I, accordingly, would direct a rehearing.