UNITED STATES, Appellee

v

WILBUR F. CULLEY, Sergeant,
U. S. Army, Appellant

12 USCMA 704, 31 CMR 290

No. 15,267

March 16, 1962

*First Lieutenant Alonzo F. Davis* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ralph W. Wofford.*
*First Lieutenant Jerome Nelson* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. Mc-*

*Conaughy, Major Francis M. Cooper,* and *First Lieutenant Francis J. Larkin.*

## Opinion of the Court

QUINN, Chief Judge:

The accused stands convicted of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He challenges both the findings of guilty and the sentence.

As defined in Article 121, larceny is committed when one "wrongfully takes, obtains, or withholds, by any means," money or personal property of another with the intent permanently to deprive or defraud him of the use or benefit thereof. The circumstances behind the accused's conviction of this offense are relatively simple.

The accused was in charge of a platoon of recruit trainees. In the middle of August 1961, he received orders directing his transfer to another station. About the same time, he was interviewed by his company commander in regard to certain unpaid debts. A number of the accused's creditors were pressing hard for payment. On pay day, the accused called Recruit Trainee Luckie, the Platoon guide, to his room. He asked Luckie to "raise . . . money for him" as a loan for a "personal matter." He represented to Luckie that he "had a check coming in the mail" and he would repay the loan within two weeks. He asked for $200.00. He did not tell Luckie of his other debts and he did not inform him of his transfer orders. Luckie enlisted the aid of Recruit Luke who he thought "could get through to the men better" than he. They informed the other recruits of the situation, and suggested that each contribute $5.00. Luckie himself contributed $40.00 since he had told the accused he would "loan him that large [an] amount." To "make sure" the contributors would get their money back, each wrote his "name down and the amount of money" he gave on a list. At the end of the collection, Luckie and Luke found they had collected $300.00. Since returning

the excess of $100.00 "presented a problem," they decided to give the entire collection to the accused. They went to his room and turned over the $300.00 to him. The accused thanked them, and assured Luckie he "appreciated" what he had done for him. The next morning the accused thanked the men in the platoon for "what you did last night." About two weeks later, he departed the station pursuant to his orders. He did not repay the loan, although before he left he drew $300.00 in advance pay. Later, when questioned about the transaction, the accused denied knowledge of the collection and receipt of the $300.00.

At trial, and again here, the accused contends that a false statement of present intention is not a statement of an existing fact; consequently, even if it be conceded he obtained the money by means of a false promise to repay, his conduct does not constitute a violation of Article 121.[1] The contention disregards the broad sweep of the Article's language to focus on the idea that the Article was intended merely to include the offense formerly described as larceny by false pretense. See United States v Aldridge, 2 USCMA 330, 8 CMR 130. From that point, the argument proceeds to a review and analysis of cases holding that a false statement of present intention is not such a statement of existing fact as would support a prosecution for false pretense. We rejected that argument in United States v Cummins, 9 USCMA 669, 26 CMR 449. On this appeal we are asked to overrule that holding.

The accused contends the *Cummins* case is contrary to the great weight of judicial authority. Special reliance is placed on Chaplin v United States, 157 F2d 697 (CA DC Cir) (1946). A divided court there held that a false declaration of a present intention to

---

[1] There is no evidence as to the truth or falsity of the accused's statement that he "had a check coming in the mail."

repay a loan is not a false statement of fact sufficient to support a conviction for obtaining money by false pretenses, even though the false representation of the intention to repay the loan induced the lender to turn over the money to the borrower. The *Chaplin* case has been repudiated in several cases by the Court of Appeals for the Second Circuit. See Grayson v United States, 166 F2d 863 (1948). Also, more than a half century ago, the United States Supreme Court settled the rule that to promise what one does not mean to perform is a fraud within the meaning of the statutes prohibiting use of the mail to defraud. Durland v United States, 161 US 306, 40 L ed 709, 16 S Ct 508 (1896). In their briefs, both appellate defense counsel and Government counsel have thoroughly and ably canvassed the field, but they break no new ground. We recognized the conflict of judicial opinion on the point in the *Cummins* case. Then, as now, we share Judge Edgerton's conviction, expressed in his dissent in *Chaplin,* that it is an "obvious fiction" to say that a statement of present existing intention is not a statement of existing fact. In Evans v United States, 153 US 584, 38 L ed 830, 14 S Ct 934, Mr. Justice Brown pointed out the significance of a fraudulent statement of present intention. He said:

". . . If a person buys goods on credit in good faith, knowing that he is unable to pay for them at the time, but believing that he will be able to pay for them at the maturity of the bill, he is guilty of no offense even if he be disappointed in making such payment. But if he purchases them, knowing that he will not be able to pay for them, and with an intent to cheat the vendor, this is a plain fraud, and made punishable as such by statutes in many of the states."

In our opinion, obtaining money or other property by means of a false statement of present intention is a "plain fraud" which will support a conviction for a violation of Article 121, supra. Accordingly, we adhere to our ruling in the *Cummins* case, and we find

706

no merit in the accused's attack on the findings of guilty.

The accused's second claim of error results from the action taken by the convening authority. On ▉▉▉▉▉ ▉ review, the convening authority modified the findings of guilty by reducing the amount of the larceny from $300.00 to $55.00. He approved a sentence which includes confinement for two years. The accused contends the sentence is illegal because it exceeds the maximum of one year provided by Title 18, § 661 of the United States Code. That section applies to larceny committed within the "special maritime and territorial jurisdiction" of the United States; it limits the period of confinement to no more than one year when the property taken has a value of under $100.00. The accused, however, is not charged with a violation of Sec. 661; if he were so charged the claim of error would have merit. United States v White, 12 USCMA 599, 31 CMR 185. This prosecution is based upon Article 121, supra, and the punishment therefor is expressly provided in the Table of Maximum Punishments. The fact that the period of confinement provided by the Table differs from that set out in the United States Code does not invalidate the Table provision. Different punishments may be provided by Congress for different areas under Federal jurisdiction. See United States v Wysong, 9 USCMA 249, 26 CMR 29. Reference to the United States Code, ▉▉▉▉▉ ▉ or to the laws of the District of Columbia, for the period of confinement that can be adjudged for a violation of a provision of the Uniform Code is permissible only when the penalty for the offense found is not listed in the Table of Maximum Punishments or is not "closely related" to a listed offense. Manual for Courts-Martial, United States, 1951, paragraph 127c; United States v White, supra; United States v Oakley, 11 USCMA 529, 29 CMR 345. When the offense is specifically listed in the Table of Maximum Punishments, the punishment provided therein governs. United States v Middleton, 12 USCMA 54, 30 CMR 54. In the *Middleton* case the

accused was charged with making a false statement in violation of Title 18, § 1001. That statute authorized confinement for five years, but since the offense was "closely related" to a violation of Article 107, Uniform Code of Military Justice, 10 USC § 907, we held that the punishment was limited to that provided in the Table of Maximum Punishments, which includes confinement for only one year.

When an act violates two or more statutes, the accused cannot select the statute under which he will be prosecuted; he cannot, therefore, complain if he is prosecuted for violating the statute that carries the higher penalty. Rosenberg v United States, 246 US 273, 294, 97 L ed 1607, 73 S Ct 1152 (1953). The fact that the United States Code provides a lesser penalty for an offense substantially similar to that proscribed by an Article of the Uniform Code may be considered in assessing the sentence, but it does not make illegal the penalty provided by the Table of Maximum Punishments for violation of that Article. United States v White, supra; cf. United States v Picotte, 12 USCMA 196, 30 CMR 196. Consequently, the sentence imposed upon the accused is legal.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

With all respect, I am required to disagree with my brothers' opinion that a present misrepresentation of future intention may constitute the basis of a false pretense in a charge of larceny in violation of Code, supra, Article 121, 10 USC § 921. I set forth the reasons for my disagreement at length in my separate opinion in United States v Cummins, 9 USCMA 669, 26 CMR 449. To the cases there cited, I add the comment of Associate Justice Clark in Chaplin v United States, 157 F2d 697 (CA DC Cir) (1946), at page 698:

"A majority of the courts having this problem placed before them have not subscribed to the theory that 'intention', as manifest by false and misleading promises, standing alone, is a *fact* in the sense required for a conviction on the charge of false pretenses . . . .

"Not only is the rule deeply rooted in our law, but moreover, we think the reasons upon which it is founded are no less cogent today than they were when the early cases were decided under the English statute cited by Wharton, supra. It is of course true that then, as now, the intention to commit certain crimes was ascertained by looking backward from the act and finding that the accused intended to do what he did do. However, where, as here, the act complained of—namely, failure to repay money or use it as specified at the time of borrowing—is as consonant with ordinary commercial default as with criminal conduct, the danger of applying this technique to prove the crime is quite apparent. Business affairs would be materially incumbered by the ever present threat that a debtor might be subjected to criminal penalties if the prosecutor and jury were of the view that at the time of borrowing he was mentally a cheat. The risk of prosecuting one who is guilty of nothing more than a failure or inability to pay his debts is a very real consideration. It is not enough to say that if innocent the accused would be found not guilty. The social stigma attaching to one accused of a crime as well as the burdens incident to the defense would, irrespective of the outcome, place a devastating weapon in the hands of a disgruntled or disappointed creditor."

We have heretofore approved convictions of the offense of dishonorable failure to pay debts, in violation of Code, supra, Article 134, 10 USC § 934. United States v Swanson, 9 USCMA 711, 26 CMR 491; United States v Cummins, supra. Having so construed the Code, we should not now add the charge of larceny to every creditor's arsenal.

I would reverse the decision of the board of review and order the charge dismissed.