UNITED STATES, Appellee

v

JOHN A. WALTER, Specialist Four,

U. S. Army, Appellant

20 USCMA 367, 43 CMR 207

No. 23,348

February 26, 1971

*Captain Joseph V. Aprile, II,* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Colonel George J. McCartin, Jr., Captain Monte Engler, Captain Frederick O. Frederickson,* and *Captain Thomas R. Maher.*

*Captain John C. Lenahan* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway, Captain Benjamin G. Porter,* and *Captain Ronald L. Stefani.*

## Opinion of the Court

QUINN, Chief Judge:

We are concerned on this appeal with the maximum period of confinement authorized for wrongful sale of lysergic acid diethylamide (LSD), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934.

In material part, the specification alleges that at Fort Gordon, Georgia, the accused did "wrongfully sell an hallucinogenic drug, to wit: lysergic acid diethylamide." At trial, counsel argued for different limits of punishment. Defense counsel contended that the accused's conduct constituted a violation of AR 600–50, change 4, dated August 18, 1969, and was, therefore, punishable by confinement for two years, that being the period prescribed in the Table of Maximum Punishments for violation of a general order or regulation. Trial counsel, however, maintained that the accused's misconduct subjected him to confinement for five years. No allegation in the specification referred, by description or number, to any criminal provision of the United States Code, and there is none to indicate that the sale was in contravention of any provision of Federal law, but the trial judge concluded that the specification alleged "a violation of Federal law,"[1]

---

[1] Omissions of the kind noted in the text do not necessarily preclude a determination that the charge is within the crimes and offenses not capital provision of Article 134, Uniform Code of Military Justice, 10 USC § 934, but they raise problems that might otherwise be avoided. See United States v Wysong, 9 USCMA 249, 26 CMR 29 (1958); United States v Oakley, 11 USCMA 529, 29 CMR 345 (1960).

specifically 21 USC § 331; and he determined that the maximum confinement for the offense was five years, as provided in the Table of Maximum Punishments for "drugs and marihuana."[2]

With few exceptions, e.g., spying and premeditated murder in violation of Articles 106 and 118, Code, supra, 10 USC §§ 906 and 918, respectively, the punishment for conduct violative of the Uniform Code is prescribed by the President. Article 56, Code, supra, 10 USC § 856. The limits of punishment appear in various sections of paragraph 127c, Manual for Courts-Martial, United States, 1969 (Revised edition), including the Table of Maximum Punishments. In the main, ascertainment of the penalty for a particular offense is merely a matter of checking the Table for that offense. Some offenses, however, are not listed. In that event, several alternative means to ascertain the punishment are provided. Unfortunately, but perhaps unavoidably, recourse to these alternatives is not as mechanical, and, therefore, not as simple a process as checking the Table, and the problem is aggravated because one alternative may result in a greater penalty than another. Consequently, appellate challenge of the trial determination of the applicable punishment is not uncommon. See United States v Turner, 18 USCMA 55, 39 CMR 55 (1968); United States v Cramer, 8 USCMA 221, 24 CMR 31 (1957); United States v Brown, 12 USCMA 368, 30 CMR 368 (1961); United States v Oakley, 7 USCMA 733, 23 CMR 197 (1957).

The conduct of which the accused stands convicted is not explicitly listed in the Table, but it constitutes a violation of a Federal civilian statute which authorizes confinement at hard labor for five years. In such situations the punishment prescribed by the civilian statute is generally controlling. United States v Oakley, 11 USCMA 529, 29 CMR 345 (1960). This result is not reached, however, by immediate and exclusive reference to the civilian statute. It must first be determined whether the accused's misconduct is either lesser included to another offense listed in the Table or "closely related" to an offense so listed; only if neither circumstance obtains does the offense, as phrased by the 1951 Manual, "remain punishable"[3] as provided by the United States Code or the Code of the District of Columbia, whichever "is the lesser." Manual for Courts-Martial, United States, 1951, paragraph 127c, at page 214. In United States v Middleton, 12 USCMA 54, 30 CMR 54 (1960), for example, the accused was convicted of a violation of Article 134, in that, contrary to 18 USC § 1001, he made a false official statement to the Department of the Army. Section 1001 authorized confinement for five years, but that penalty was held inapplicable. We pointed out that "court-martial punishment is based upon violations of the Uniform Code of Military Justice" and cannot exceed the limits prescribed by military law for the particular misconduct. We noted that the conduct prohibited by section 1001 was " 'closely related' " to that prohibited by Article 107, Code, supra, 10 USC § 907, which was specifically listed in the Table of Maximum Punishments. Applying the provisions of paragraph 127c, we concluded that the period of confinement listed in the Table for Article 107, which was one year, was "controlling." See also United States v White, 12 USCMA 599, 31 CMR 185 (1962).

Wrongful sale of LSD is not lesser included to any offense specifically

---

[2] Apparently, the judge and counsel were unaware of the change in confinement effected by the Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 127c, section A, Table of Maximum Punishments.

[3] The 1969 Manual substituted the word "are" for "remain," but the change of language contemplated no change in substance. Analysis, Manual for Courts-Martial, United States, 1969, paragraph 127c(1).

listed in the Table of Maximum Punishments. See United States v Turner, supra. Nor is it contended that any offense listed in the Table is so described as to indicate a close relationship to wrongful transactions in LSD. In these circumstances, literal compliance with paragraph 127c would, as we have seen, require recourse to the United States Code for ascertainment of the limits of confinement. However, appellate defense counsel contend that the punishment listed in the Table for violation of a general order or regulation is the appropriate reference because, while not charged as a violation of Article 92, Code, supra, 10 USC § 892, the accused's conduct violated AR 600–50.

It is indeed true that an order or regulation has, under Article 92, the force of law. It is also true that conduct cannot be regarded as violative of Article 92 without considering the content of the order or regulation. It is, therefore, not illogical to conclude, as the accused urges, that the punishment listed in the Table for violation of an order or regulation is not predicated just on the statutory language of Article 92, but requires reference to the particular provision of an order or regulation governing conduct of the kind for which the accused has been convicted. Certainly, if the accused had been tried for a violation of Article 92 by engaging in conduct prohibited by AR 600–50, consideration would have to be given to the substance of the regulation to determine the limits of punishment.

Under footnote 5 of the Table,[4] not all violations of a general order or regulation subject the accused to the punishment prescribed for Article 92 offenses. In some instances he may be subject to a lesser punishment; what that lesser punishment is depends upon the nature and purpose of the order or regulation. United States v Buckmiller, 1 USCMA 504, 4 CMR 96 (1952). If the order or regulation is intended merely to enjoin conduct already governed by statute so that violation of the order or regulation also constitutes another specific offense, for which a lesser punishment is prescribed in the Table, the lesser punishment for the specific offense is the maximum, not that listed in the Table for violation of Article 92. United States v Renton, 8 USCMA 697, 702, 25 CMR 201 (1958). However, treating the punishment listed for an Article 92 offense as though it included the content of a general order or regulation defining conduct prohibited by a provision of the United States Code and which is the subject of the charge of which the accused is convicted does not result in the conclusion that the punishment is that listed in the Table for Article 92.

Had AR 600–50 not been promulgated, the accused's conduct would still contravene 21 USC § 331(q), and he would still be subject to prosecution for a violation of Article 134; on conviction, he was liable to confinement for the period provided in Title 21 (section 331(b)). United States v

---

[4] Manual for Courts-Martial, United States, 1969 (Revised edition), Table of Maximum Punishments, paragraph 127c, footnote 5, reads as follows:
 "This punishment does not apply in the following cases:
 "(1) If in the absence of the order or regulation which was violated or not obeyed the accused would on the same facts be subject to conviction for another specific offense for which a lesser punishment is prescribed in this table.
 "(2) If the violation or failure to obey is a breach of restraint imposed as a result of an order.

"In these instances, the maximum punishment is that specifically prescribed elsewhere in this table for the offense."
In the Manual for Courts-Martial, United States, 1951, footnote 5, read as follows:
 "The punishment for this offense does not apply in those cases wherein the accused is found guilty of an offense which, although involving a failure to obey a lawful order, is specifically listed elsewhere in this table."

Oakley, 11 USCMA, supra. The accused's argument contemplates that issuance of AR 600–50 had the immediate effect of reducing the confinement from five years, as prescribed by the statute, to two years, as provided in the Table of Maximum Punishments for violation of a general order or regulation. That result is contrary to the purpose of paragraph 127c and inconsistent with the principle of uniform application of the Manual for Courts-Martial to all of the armed services.

As we have seen, the punishment provision for violation of an order or regulation does not in- ■ crease the penalty if the Table lists a lesser penalty for the same misconduct. Similarly, the mere existence of a general order or regulation cannot decrease the punishment expressly provided in the Table for the same misconduct. To illustrate, let us suppose a general order defining the conduct of trainees directs that they obey the orders of their commissioned officers. Willful disobedience of an order of an officer by a trainee would violate the order, but it also violates Article 90, Code, supra, 10 USC § 890, which is listed in the Table; if convicted of the latter offense, the accused is subject to the maximum punishment provided for Article 90, which includes confinement for five years, notwithstanding the existence of the general order and the two years confinement limit provided in the Table for violation thereof. Inapplicability of the penalty listed for an Article 92 offense in both situations results from the fact that, in the absence of special circumstances (see United States v Yunque-Burgos, 3 USCMA 498, 13 CMR 54 (1953); United States v Loos, 4 USCMA 478, 16 CMR 52 (1954)), an order or regulation which merely enjoins conduct already imposed upon the individual by law is substantially an order to obey the law and, as such, has no effect on the "limit [of punishment] of the ultimate offense committed." United States v Bratcher, 18 USCMA 125, 128, 39 CMR 125 (1969); see also United

States v Renton, supra, at page 702. Thus, all military accused violating the same statute are subject to the penalty listed in the Table for that offense, regardless of the accidental circumstance that a particular service or command has promulgated a general order or regulation proscribing the same conduct as the statute. Paragraph 127c applies the rule to misconduct for which a punishment is not specifically listed in the Table.

Many offenses unlisted in the Table are violations of Article 134 founded upon conduct contrary to a provision of the United States Code. Paragraph 127c "sought to insure that comparable offenses will not be punishable in military law to any greater extent than in civil jurisdictions of the United States." Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, at page 189. Comparability of punishment would be impaired, however, if ascertainment of the penalty required that consideration be first given to whether the accused was subject to a general order or regulation prohibiting the same act.

Authority to promulgate general orders inheres not only in each service Secretary, but in different commands within the same service. See United States v Stone, 9 USCMA 191, 25 CMR 453 (1958); United States v Chunn, 15 USCMA 550, 36 CMR 48 (1965). If such order or regulation were extant, the military accused would be subject to a different punishment than the civilian accused; and he would also be liable to a penalty different from an accused in a command not subject to the order. Thus, the punishment for misconduct in violation of a Federal statute would not be that prescribed by the President for the specific offense, as was the situation in United States v Culley, 12 USCMA 704, 31 CMR 290 (1962), but a consequence of the administrative activity of the accused's command. The language of paragraph 127c, the purpose it was intended to achieve, and the impractical effects of an application such as that urged by

the accused, convince us that the President did not intend in such cases to disregard the punishment provided by Congress for the offense in favor of ascertaining the punishment "by analogy" to that of an order or regulation by a military authority on the same subject. United States v Oakley, 11 USCMA, supra, at page 532. We ■ conclude, therefore, that, while the military judge erred in concluding that the period of confinement was determinable by reference to the "drugs and marihuana" listing in the Table of Maximum Punishments, the accused was not prejudiced because that period of confinement is the same as the penalty determined by proper application of paragraph 127c, that is, the period of confinement provided by the United States Code for the accused's misconduct.

The decision of the United States Army Court of Military Review is affirmed.

Judge DARDEN concurs.

FERGUSON, Judge (dissenting):

I dissent.

In their analysis of the propriety of charging an offense under Article 134, Uniform Code of Military Justice, 10 USC § 934, which offense is at the same time proscribed by a general order or regulation within the purview of Article 92, Code, supra, 10 USC § 892, my brothers have neglected to consider the requirements of paragraph 27, Manual for Courts-Martial, United States, 1969 (Revised edition), as it pertains to the question before us. Paragraph 27, Manual, supra, provides in part:

"... When an offense is specifically defined in a particular punitive article, it ordinarily should be charged under that article rather than under Article 134, the general article."

Article 92 is one of the punitive articles of the Code (Chapter XXVIII —Punitive Articles, Manual, supra) and regulations promulgated thereunder must be considered, when charging a violation of the Code, before recourse may be had to the use of Article 134. What other meaning can there be to paragraph 27, Manual, supra, for there is hardly a violation of the law which cannot in some way be viewed as conduct to the prejudice of good order and discipline or conduct of a nature to bring discredit upon the armed forces. Paragraph 213b, Manual, supra. As this Court stated in United States v Hallet, 4 USCMA 378, 382, 15 CMR 378 (1954):

"... Article 134 was not intended by Congress to apply in areas otherwise the subject of specific attention in Articles of the Uniform Code."

In enacting Article 92 of the Code, the Congress has granted to the military the power to specify certain conduct as being criminal in nature and punishable by confinement at hard labor and other penalties. As my brothers concede, "an order or regulation has, under Article 92, the force of law." Regarding Article 92(1), paragraph 171a, Manual, supra, states:

"... A general order or regulation is lawful unless it is contrary to the Constitution, the laws of the United States, or lawful superior orders or for some other reason is beyond the authority of the official issuing it."

My brothers hold that the accused is subject to confinement at hard labor for five years, rather than the two years maximum imposable for a violation of Article 92(1), Code, supra, because five years is the punishment provided under the United States Code for one who wrongfully sells lysergic acid diethylamide. See generally, 21 USC § 321, et seq. However, the specification in this case does not even refer to the Federal statute,[1]

[1] Violations of the United States Code are cognizable in military law, as violations of Article 134, Uniform Code of Military Justice, 10 USC § 934, *if the offense is not otherwise mentioned in the Code.*

and I am certain that had the Federal statute been pleaded we would have looked to the Article 92 offense for the appropriate punishment. Court-martial punishment is based upon violations of the Code and cannot exceed the limits prescribed by military law for the particular misconduct. United States v Middleton, 12 USCMA 54, 30 CMR 54 (1960). Cf. United States v White, 12 USCMA 599, 31 CMR 185 (1962).

In *Middleton*, the accused was charged under Article 134 with violating Title 18, United States Code, section 1001, by knowingly submitting a false efficiency report in a matter within the jurisdiction of the Department of the Army. Section 1001 authorized confinement for five years, but that penalty was held inapplicable on the ground that the conduct prohibited thereby was *closely related* to that proscribed by Article 107, Code, supra, 10 USC § 907 (false official statements), which authorized confinement at hard labor for only one year.

In this case we need not even search for proscribed conduct that is *closely related* to the Federal statute, for change No. 4 to AR 600–50, August 18, 1969, was promulgated, under the authority of Article 92, Code, supra, "to reflect the 1968 amendment to 21 USC 321 (PL 90–639, 24 Oct 68) which specifically mentions LSD (lysergic acid diethylamide)." It is clear, by virtue of this enactment, that the Army has made applicable to its members the specific provisions of the Federal statute. See change No. 2 to AR 600–50, May 15, 1968. I agree with defense counsel at trial that the penalty for a violation of Article 92(1) (two years) should prevail over that prescribed by the United States Code (five years). United States v Middleton, supra.

The majority's discussion on the need for uniform application among the services is not, in my opinion, controlling in this case. AR 600–50 is entitled "STANDARDS OF CONDUCT FOR DEPARTMENT OF THE ARMY PERSONNEL." The regulation is an implementation of the following documents: (1) Executive Order 11222 of May 8, 1965, prescribing standards of conduct for Government officers and employees; (2) Department of Defense Directive 5500.7, dated March 22, 1966; and (3) the Civil Service Commission Regulation of October 1, 1965. It is in consonance with the Code of Ethics for Government Service contained in House Concurrent Resolution 175, 85th Congress, which applies to all Government personnel. As explained in the regulation, the Department of Defense Directive applies to "all active duty officers and enlisted members of the Army, Navy, Air Force, and Marine Corps." (*Ibid.*, at page 3.) In such circumstances, it is not unreasonable to believe that each of the services has implemented this Directive in a similar manner.

Since I believe that the maximum imposable confinement at hard labor for the single offense charged against the accused (the wrongful sale of lysergic acid diethylamide) is two years and not five as held by the military judge, I would reverse the decision of the Court of Military Review and direct that a rehearing on sentence may be ordered.