UNITED STATES, Appellant

v.

JOHN JOSEPH KARL, Airman Apprentice, U. S. Navy, Appellee

3 USCMA 427, 12 CMR 183

No. 1904

Decided October 9, 1953

CDR Robert F. Milota, USN, for Appellant.
MAJ Francis C. Foley, Jr., USMCR, for Appellee.

GEORGE W. LATIMER, Judge:

Accused was charged with two specifications of wrongfully selling instruments purporting to be official pass forms in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He pleaded guilty to both specifications and was sentenced by a special court-martial to a bad-conduct discharge, confinement for six months, and forfeitures of $57.20 per month during that period of confinement. The convening authority and the officer exercising general court-martial jurisdiction approved the findings and sentence with certain modifications, but the board of review declared the proceedings a nullity on the ground that the specifications did not allege offenses under Article 134. The Judge Advocate General of the Navy has certified the case to this Court, requesting that we determine the correctness of the decision of the board of review.

The specifications, to which the accused pleaded guilty, are as follows:

"In that . . . [accused] *did, . . . during the period from 11 August 1952 to 11 September 1952, wrongfully sell to four military personnel* on board the U. S. Naval Air Technical Training Unit, U. S. Naval Air Material Center, U. S. Naval Base, Philadelphia 12, Pennsylvania, *certain instruments purporting to be military permits in words and figures as follows:* armed forces liberty pass, service, date issued, last name—first name—middle initial, card no., service no., grade-rate, organization—installation—base, time limits, signature and grade of issuing officer, DD(N)–345 1 April 1950, 16–63060–1, GPO, he, the said Karl, *then well knowing the same to be unauthorized and to the prejudice of good order and discipline.*

"In that . . . [accused] *did, . . .* on or about 1 September 1952, wrongfully sell to Harry Charlton Gibson, 460 23 72, . . . on board the U. S. Naval Air Technical Training Unit, . . . *a certain instrument purporting to be a naval official pass in words and figures as follows:*

temporary identification card, 4ND–GEN–3235, ship or station, date issued, name, rank/rate, service no., birth date, height, weight, hair, eyes, signature (validating officer), void after, NAVY–DPPO–4ND, PHILA., PA., he, the said Karl, then *well knowing the same to be unauthorized and to the prejudice of good order and discipline.*" [Emphasis supplied].

The board of review based its decision on three grounds; the first ground being that the specifications did not allege that the accused sold the forms with an intent to deceive or to defraud the purchaser; the second, that the allegations were insufficient to apprise the accused of what he must defend against because the purchasers were not identified in the first specification; and third, that the record was insufficient to enable the accused to avoid a second prosecution for the same offense.

Neither the Code nor the Manual for Courts-Martial, United States, 1951, contains a provision setting out the essential elements of the offense of wrongful sale of naval or military passes. The board of review, by comparing the specifications herein with the sample form (No. 138), found in Appendix 6c, Manual for Courts-Martial, supra, at page 490, reached the conclusion that fraudulent intent is an element, and hence must be alleged in the specification. Appellate defense counsel attempts to support that conclusion by relying on an Army board of review decision in United States v. Harmon, 40 BR 45. The board in that case passed upon the sufficiency of the evidence to support a specification in which it was alleged that the accused wrongfully, unlawfully, and with fraudulent intent had in his possession a certain furlough certificate, in violation of Article of War 96, 10 USC § 1568. The board of review stated:

". . . There is not a scintilla of evidence that accused used or attempted to use the document for any purpose. An examination of exhibit E

discloses that it was not a furlough certificate or military pass as alleged nor does it purport to be one. It is nothing more than the naked form itself, with a typed reference to Army Regulation 615–275 and the typed name of 'Ford, Albert S. 32266689 Pvt 1cl Pvt.' It was not signed by anyone. *Certainly the mere possession of an incompleted, unsigned WD AGO Form No. 31 does not constitute an offense within the meaning of Title 18, Section 132, United States Code, nor is it a violation of Article of War 96.*" [Emphasis supplied.]

As a practical matter, there is little difference between the failure of the evidence to prove an offense as was the case in *Harmon,* supra, and the failure of a specification to allege an offense as in the case at bar, and the rationale of the former case would be influential in this instance if the specification herein had charged possession. But here, we are concerned with a charge that the accused "wrongfully sold" certain instruments purporting to be military passes, knowing the same to be unauthorized. We believe the board used an acceptable method in the absence of a specific Code or Manual provision defining the offense, in applying the provisions of the sample specification to determine the sufficiency of the specification now under consideration. However, the form is a cover-all for various types of offenses and it must be considered in the light of the offense committed as the several offenses involving unauthorized military or naval passes are different, and all do not require fraudulent intent. A close examination of the sample form discloses that the phrase "with intent to defraud or deceive" is bracketed in such a manner as to be required only in cases where it is alleged that the accused used, or had in his possession, a false or unauthorized pass, and is apparently not necessary where the specification alleges the sale of a pass. Here we are concerned with the latter and since the phrase is not so bracketed in the sample specification and, as will hereinafter appear, we find no other compelling reason to require its inclusion, we conclude the language used in the present specification is sufficient to allege an offense.

The board of review further concluded that the failure of the first specification to name the purchasers of the pass forms rendered it fatally deficient because it did not apprise the accused of what he must defend against and it would not enable him to avoid a second prosecution for the same offense. Concededly, an insertion of the names of the individuals to whom the sales were made would have rendered the specification more definite and certain. However, because an offense may be alleged with a greater degree of clarity and certainty does not justify a holding that the pleading is a nullity. Whether an offense is stated is based upon a determination of whether the facts alleged or reasonably implied from those set forth meet the test stated in the Manual and used by the board. That test breaks into two parts, namely, are the facts stated with sufficient particularity to apprise the accused of what he must defend against, and does the record sufficiently enable him to avoid a second prosecution for the same offense? Paragraph 87*b,* page 145, Manual for Courts-Martial, supra. As to the first part of the test, the accused was charged with conduct which was prejudicial to good order of the Naval service arising out of four sales of unauthorized pass forms within a one-month period. The period was identified, the place of sales was mentioned, and every necessary ingredient was included except the names of the four purchasers. These could have been identified readily had the Government been required to prove the allegations, and, had the accused wanted more specific information, a motion could have been made. The names of the purchasers are not an essential element of the offense and the accused apparently was not uninformed, as the sales were well enough identified to permit him to acknowledge his guilt. When the specification is tested by the principles governing the particularity with which an offense must be alleged, we find this specification sufficient. Contrary to the finding of the board of review, there just is not a rational basis

to sustain the contention that accused was not apprised of the offense against which he must defend.

As to the second part of the test, we likewise find no substantial reason to hold that the record would not prevent a second prosecution for the same offense. If perchance there were other sales between the two dates, the accused does not stand to be prejudiced as his conduct in selling unauthorized passes is the source of the disorder and the sales during the particular period involved are grouped into one offense. Any other sales not mentioned could not be the predicate for another disorder as a plea of once in jeopardy would bar any prosecution for similar acts during the same period.

We again call attention to the principle that if an accused seeks to complain on appeal that a pleading is indefinite and uncertain he should first attack it before trial. Here a copy of the charge and the specifications were served upon the accused on September 29, 1952, and trial was held on October 2, 1952. Accused and his counsel were informed in open court of the nature of the charges. Thereafter counsel for the accused announced they had no motions to make and a plea of guilty to the charge and both specifications was entered. The accused was fully warned of the meaning and effect of his plea, but persisted therein. Had he or his counsel been uncertain as to the particular sales involved, assuming he had made more than four, and that in order for him to defend properly he needed the purchasers identified, a motion for appropriate relief should have been made. Paragraph 69*b* of the Manual provides for a motion for relief in such circumstances, and it is as follows:

"If a specification, although alleging an offense cognizable by courts-martial, is defective in some matters of form as, for example, that it is inartfully drawn, indefinite, redundant, or that it misnames the accused, or is laid under the wrong article, or does not contain sufficient allegations as to time and place, the objection should be raised by motion for appropriate relief."

While a failure to attack a specification because it does not state an offense cannot be waived, a neglect to attack it for other reasons can. If the specification is so inartfully drawn that the accused runs a fair risk of being misled, an appropriate motion will permit the issue to be framed properly. However, an accused cannot gamble on overlooking uncertainty at the trial level and then succeed in asserting it on appeal. If he claims he is uninformed on appeal, he must have been unenlightened before he entered his plea and the appropriate time to litigate that issue is before plea is entered. If an accused does not exercise his right to have the specification clarified at that time, in the absence of a miscarriage of justice, he waives his right to complain on appeal.

Finally, appellate defense counsel contends that the acts alleged in the specification are not such as would constitute a disorder as that term is used under Article 134, supra. In this connection, it is noted the specifications alleged that the accused "well knew his acts were unauthorized and to the prejudice of good order and discipline." To this allegation he entered a plea of guilty, thereby recognizing the wrongful nature of his acts and admitting a general criminal intent to commit acts which he knew were disorders and prejudicial to naval discipline.

Paragraph 213*a* of the Manual, which discusses such acts, states as follows:

" 'To the prejudice of good order and discipline' refers only to acts directly prejudicial to good order and discipline and not to acts which are prejudicial only in a remote or indirect sense. An irregular or improper act on the part of a member of the military service can scarcely be conceived which may not be regarded as in some indirect or remote sense prejudicing discipline, but the article does not contemplate such distant effects and is confined to cases in which the prejudice is reasonably direct and palpable."

That provision would require us to sustain appellant's contention if the acts alleged were so innocuous as to

have no impact on the naval service. But we find otherwise. The words "to the prejudice of good order and discipline" have long been in common use in military jurisprudence. Colonel Winthrop in his volume on Military Law and Precedents, 2d ed., 1920 Reprint, page 723, defines the phrase as follows:

"This descriptive phrase is so familiar to military persons that it hardly need be explained that 'prejudice' is used here in the sense of detriment, depreciation or an injuriously affecting.

"The term 'good order,'—inasmuch as most of the cases contemplated by the Article are cases of *military* neglects and disorders,—may be regarded as referring mainly to the order—*i.e.* condition of tranquillity, security and good government—of the military service."

If we apply the test outlined in the two foregoing authorities, we must find that the alleged sales directly and injuriously affected the tranquillity, security, or good government of the naval service. The full details of the crime are obscured behind the plea of guilty, but there are enough presented by the specification to show an abuse of naval processes. Passes are available for military personnel and it is not necessary that they expend their own funds to obtain forms they are entitled to at no cost. It is extremely important that pass privileges be not abused as, in an effort to stamp out any illegal traffic, innocent parties may be denied privileges they would otherwise be entitled to. Morale and discipline are dependent upon the maintenance of liberality and equality in granting privileges and it is important that those in authority have control over the availability and issuance of permits for leave. Under the specifications in the present case accused was charged with wrongfully selling pass forms to other military personnel and the only reasonable conclusion to be drawn from the allegation and the fair inferences is that the value represented by the purchase price lay in the possible use of the pass forms to circumvent the leave regulations and orders in force. The unauthorized and indiscriminate sale of blank pass forms for a valuable consideration constitutes either a fraud on the purchasers or a means of assisting them in a scheme to obtain advantages not enjoyed by other personnel. Either is prejudicial to good order of the naval service. Accordingly, we conclude that the offenses alleged in both specifications are disorders within the meaning of Article 134, supra.

The decision of the board of review is reversed and the case is remanded to The Judge Advocate General of the Navy for action consistent with this opinion.

Chief Judge QUINN and Judge BROSMAN concur.