UNITED STATES, Appellee

v

CHASE E. WARTHEN, JR., Airman Third Class,
U. S. Air Force, Appellant

11 USCMA 93, 28 CMR 317

No. 13,175

Decided December 24, 1959

Lieutenant Colonel Philip J. Williamson argued the cause for Appellant, Accused. With him on the brief was Lieutenant Colonel James L. Kilgore.

Major Lawrence J. Gross argued the cause for Appellee, United States. With him on the brief were Colonel John F. Hannigan, Lieutenant Colonel Robert W. Michels, and Major Fred C. Vowell.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial at Vandenberg Air Force Base, California, convicted the accused of wrongful appropriation of a Government vehicle and falsely making an official pass, in violation of Articles 121 and 134, respectively, Uniform Code of Military Justice, 10 USC §§ 921, 934. It imposed a sentence which includes a bad-conduct discharge and confinement at hard labor for twelve months. Intermediate appellate authorities affirmed the sentence. We granted review to consider the instructions on the maximum punishment for the false pass charge.

The law officer instructed the court members on the legal limits of punishment and other matters they could consider in determining an appropriate sentence. In part, he advised them that the maximum punishment for the false pass offense extended to confinement at hard labor for three years. No objection was made by the defense at that time, but the correctness of the instruction is now challenged on the ground that the offense found is merely a simple disorder which carries a maximum confinement of four months.

The Uniform Code does not deal in specific terms with pass violations. However, certain acts relating to a pass are prohibited in the Federal Penal Code (18 USC § 499). These are incorporated into military law by Article 134. Additionally, Article 134 covers other pass violations which discredit the armed forces or prejudice good order and discipline. United States v Blue, 3 USCMA 550, 13 CMR 106. The Table of Maximum Punishments,

**93**

Manual for Courts-Martial, United States, 1951, sets out a three-year period of confinement for "making, using, altering, possessing, selling, or otherwise disposing of," a false pass. In the *Blue* case we noted that this listing is merely a convenient short form of description and does not define the essential elements of the pass offenses punishable by three years. Accordingly, we held possession of a false pass without an accompanying intent to deceive was punishable not as a three-year offense, but only as a simple disorder which carries a maximum confinement of four months.

Here, the specification alleges that the accused "wrongfully and falsely" made an official pass representing that he was a member of the Office of Special Investigations and had "Special Off Duty" liberties. There is no allegation that the instrument was made with intent to deceive. Appellate defense counsel observe that the specification may be sufficient as a form of pleading. Cf. Manual for Courts-Martial, United States, 1951, appendix 6c, form 138, page 490. They frankly and freely concede that the word "falsely" can imply an intent to deceive and may be sufficient to charge a three-year offense. However, they contend that "falsely" can also be interpreted to mean only that the thing represented is untrue, and that the untruthfulness may be a result of carelessness, mistake, or accident, rather than an intention or design to deceive. See State v Foster, 355 Mo 557, 197 SW 2d 313, 324; Metropolitan Life Insurance Co. v Adams, 37 Atl 2d 345, 350 (Mun App DC). Consequently, the defense maintains, the court-martial might have based its verdict of guilty on a finding that the accused made a false pass, but had no intent to deceive. Thus, in its view, the offense found is only making a false pass without an intent to deceive, which is punishable only as a disorder.[1]

Attempting to cut through the instructional problem presented by the defense approach, Government counsel contend that the mere making of a false pass is a three-year offense, without regard to the existence or absence of an intent to deceive. They maintain that the several acts constituting pass violations, as specified in the basic Federal statute, 18 USC § 499, are separate and distinct, and that the prohibition against the false making of a pass requires no intent to deceive. They divide the statute[2] into four classes of crimes as follows:

"Whoever

[1] *falsely makes*, forges, counterfeits, alters, or tampers with any naval, military, or official pass or permit, issued by or under the authority of the United States, *or*

[2] *with intent to defraud* uses or possesses any such [any naval, military, or official pass or permit, issued by or under the authority of the United States] pass or permit, *or*

[3] *personates or falsely represents* himself to be or not to be a person to whom such [any naval, military or official pass or permit, issued by or under the authority of

---

[1] Part of the instruction is as follows:
"The court is advised that certain terminology used in the Specification of Additional Charge regarding wrongfully and falsely—the court is advised that falsely means that which is not true, that which is misleading or something more than a mere untruth. The word false oftentimes connotes the intent to deceive. It can and does mean, in connection with the word falsely, a failure to state a material fact or an omission to state a material fact."

[2] 18 USC § 499 provides as follows:

"Whoever falsely makes, forges, counterfeits, alters, or tampers with any naval, military, or official pass or permit, issued by or under the authority of the United States, or with intent to defraud uses or possesses any such pass or permit, or personates or falsely represents himself to be or not to be a person to whom such pass or permit has been duly issued, or willfully allows any other person to have or use any such pass or permit, issued for his use alone, shall be fined not more than $2,000 or imprisoned not more than five years or both."

the United States] pass or permit has been duly issued, *or*

[4] *willfully* allows any other person to have or use any such [any naval, military, or official pass or permit, issued by or under the authority of the United States] pass or permit, issued for his use alone. . . ." [Emphasis supplied.]

Since class (1) in their enumeration does not contain the words "intent to deceive" or any "requirement" of willfulness, Government counsel conclude that neither is an element of the offense. The terms of the statute they say are plain and explicit and are, therefore, to be strictly construed.

In United States v Ariola, 2 USCMA 637, 10 CMR 135, we pointed out that the word "false" is not used in the same way in all statutes. In one case it may mean merely that which is incorrect or untrue; in another it may mean what is intentionally untrue. In the opinion of my brothers, the former is what is meant by the statute before us. Under this view, it would appear that the making of a pass containing known false information is a three-year offense, although concededly made as a mere joke or for some other innocent purpose. However, the Court of Appeals for the Second Circuit has indicated that a different rule might apply in a case of this kind. In United States v Achtner, 144 F2d 49 (CA2d Cir) (1944), it had before it a statute making it an offense for an alien to "falsely represent" himself to be a citizen. In pertinent part the court said:

". . . it is not to be assumed that so severe a penalty is intended for words spoken as a mere boast or jest or to stop the prying of some busybody, and the use of the words 'knowingly' and 'falsely' implies otherwise. Thus, it is said that the word 'falsely' particularly in a criminal statute, suggests something more than a mere untruth and includes 'perfidiously' or 'treacherously,' Dombroski v Metropolitan Life Ins. Co. 126 NJL 545, 19 A2d 678, 680, 20 A2d 441; 35 CJS, Falsely, pp 626, 627, or 'with intent to defraud,' as has been held with respect to the counterfeiting laws, United States v Otey, CC Ore, 31 F 68; . . .'"

I prefer to approach the problem before us on the narrow ground urged by the accused; that is, from the standpoint of the instructions. The implication of an evil intent is implicit in the word "falsely." As the *Otey* case points out, the maker's state of mind is *"prima facie* to be inferred" from the facts stated and if it is no "part of the statutory definition of the offense," it need not be alleged. The word "falsely" as used in an instruction "cannot be construed otherwise than to mean something designedly untrue or deceitful, and as involving an intention to perpetrate some fraud." Fouts v State, 113 Ohio St 450, 149 NE 551, 554. The instruction in this case defines the word further. The definition includes some matter that is immaterial to the issues, *e.g.,* omissions of a material fact; but it makes clear that the court-martial must find beyond a reasonable doubt "something more than a mere untruth." The findings are, therefore, consistent with the charge and support a three-year sentence. The law officer's instructions to that effect are correct.

The decision of the board of review is affirmed.

LATIMER, Judge (concurring in the result):

I concur in the result.

I agree that the offense of wrongfully and falsely making a false official pass permits imposition of punishment including three years' confinement. However, in view of prior decisions by this Court which may possibly have injected some confusion into this area, I deem it advisable to discuss them briefly.

In United States v Blue, 3 USCMA 550, 13 CMR 106, we concluded that wrongful possession of a false pass without intent to deceive was a mere disorder, punishable by four months' confinement and partial forfeitures. See also United States v Tamas, 6 USCMA 502, 20 CMR 218. And in United States v Karl, 3 USCMA 427, 12 CMR 183, where there was no allegation of intent to deceive or defraud, this Court held that offenses charging wrongful sale of

blank pass forms were disorders under Article 134, Uniform Code of Military Justice, 10 USC § 934. Likewise, in United States v Alberico, 7 USCMA 757, 23 CMR 221, we determined that where the gist of an accused's delict was wrongful possession of blank pass forms, it was, in the absence of intent to deceive, punishable as a mere disorder.

That is not to say, however, that all pass offenses are but mere disorders unless the offender intended to deceive or defraud. Indeed, quite to the contrary, as the Chief Judge points out, the Federal penal statute requires such intent only in instances of possession or use, but does not prescribe that intent as an element of the offense where the crime is committed by making, forging, counterfeiting, altering, or tampering. 18 USC § 499. And the parties are correct in their agreement that pass offenses in the military spring from the Federal statute.

A careful consideration of our prior holdings demonstrates they are entirely consistent with that concept and the particular wording of the law. Specific reference to our opinion in United States v Blue, supra, clarifies the matter. There the accused's approved conviction was for wrongful possession of a false pass without intent to deceive. The Table of Maximum Punishments permits imposition of three years' confinement for "making, using, altering, possessing, selling, or otherwise disposing of" a false or unauthorized military pass. Paragraph 127c, Manual for Courts-Martial, United States, 1951, page 226. With regard to that accused's possession offense, we held that failure to include intent to deceive in the listing could not be interpreted as an intent to eliminate that element from the substantive offense. But we went on to say:

". . . The listing includes many variations in the way in which the offense may be committed and *the intent to deceive is not principally important in all*.

. . . . .

". . . sample form No. 138 in Appendix 6, at page 490, is a cover-all specification for the various offenses relating to military passes. In United States v Karl, 3 USCMA 427, 429, 12 CMR 183, 185, we held that intent to deceive was an element which was associated in the form specification with possession of the pass. We there stated:

'. . . However, the form is a cover-all for various types of offenses and it must be considered in the light of the offense committed as the several offenses involving unauthorized military or naval passes are different, and all do not require fraudulent intent. A close examination of the sample form discloses that the phrase *"with intent to defraud or deceive" is bracketed in such a manner as to be required only in cases where it is alleged that the accused used, or had in his possession, a false or unauthorized pass*, and is apparently not necessary where the specification alleges the sale of a pass. . . .' [Emphasis supplied.]

"Implicit in that finding is the suggestion that *in order to place possession of a false pass on the same plane of gravity with other offenses included in the form specification an intent to deceive must be present*."

[Emphasis partially supplied.]

Quite clearly we indicated our belief that intent to deceive is required in the three-year pass offenses only in instances of possession or use. Confusion, then, can only arise from our decision in United States v Karl, supra, where we held sale of pass forms to be a disorder. It must be remembered, however, that in *Karl*, as in *Alberico*, we were concerned with blank pass forms and, of course, a form has no apparent efficacy until it is filled in. While sale of such a blank form is obviously a disorder, it is certainly not the same offense nor so serious as selling a completed false or unauthorized liberty pass. This difference should be apparent from the fact that Congress proscribed certain acts and conduct pertaining to false passes—including the offense with which we are concerned

in the case at bar, the making thereof —as offenses carrying a maximum penalty of five years' confinement, but it said nothing about the possession or sale of blank pass forms. Thus our opinion in *Karl* does not at all indicate we would require an accompanying intent to deceive to raise sale of a false pass—or the wrongful making or altering thereof—to the level of the offense for which the Table of Maximum Punishments, supra, prescribes a three-year imposable sentence.

Rather, the situation with which we are here concerned is somewhat similar to counterfeiting. In United States v Otey, 31 Fed 68 (1887), to which the Chief Judge refers, the accused moved to arrest judgment on his counterfeiting conviction on the ground that his indictment failed to allege intent to defraud. The statute therein involved proscribed falsely making, forging or counterfeiting United States coins and also other activities when accompanied by the intent to defraud. It was there held:

"... that the knowledge and intent to defraud mentioned in section 5457 of the Revised Statutes refer only to the crime of passing counterfeit money, or having the same in possession; and therefore an indictment for counterfeiting need contain no averment on the subject. And the very fact that the qualification of knowledge and intent to defraud is expressly stated twice in the section, in the same words, in the definition of the crimes of passing and possessing counterfeit coin, and not in the definition of the crime of counterfeiting it, shows plainly that it was not the intention of congress to make these circumstances an element of the latter crime. As the statute is drawn, if it was intended to make an intent to defraud an express ingredient of the crime of counterfeiting, it would have been so stated before proceeding to the definition of the crimes of possessing and passing spurious coin."

See also Kaye v United States, 177 Fed 147, 150, 151 (CA7th Cir) (1910).

The same reasoning applies here and dictates the conclusion that intent to deceive is not an element of falsely making an official pass. Accordingly, it follows that the law officer properly instructed that permissible punishment for this offense included confinement for three years. I, therefore, join in affirming the decision of the board of review.

FERGUSON, Judge (concurring in the result):

I concur in the result and agree with Judge Latimer's separate opinion.

The accused was tried by general court-martial and found guilty of wrongful appropriation, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and wrongfully and falsely making an official pass, in violation of Code, supra, Article 134, 10 USC § 934. He was sentenced to bad-conduct discharge and confinement at hard labor for twelve months. Intermediate appellate authorities affirmed, and we granted review on the issue whether the law officer erred in advising the members of the court-martial that the maximum penalty for falsely making the pass was dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for three years.

The pass offense of which accused was convicted was set out in the specification as follows:

"In that AIRMAN THIRD CLASS CHASE E. WARTHEN, United States Air Force, 392d Installations Squadron, 392d Combat Support Group, did at Vandenberg Air Force Base, California, on or about 1 December 1958, wrongfully and falsely make a certain instrument purporting to be an official pass in words and figures as follows:

[Pass set forth in *haec verba*]

he, the said Airman Third Class Chase E. Warthen, then well knowing the same to be false."

Appellant and appellee agree that the foregoing alleges a violation of 18 USC § 499, prohibiting a number of offenses in relation to military passes. However, appellant urges that an intent

to defraud is an essential element of the offense of falsely making an official pass under that statute, and the failure of the law officer to instruct the members of the court to that effect reduces the delict to a simple disorder and the possible punishment to confinement at hard labor for four months and forfeiture of pay for a like period. Admitting that the statute does not expressly require an intent to defraud, he argues that such is to be implied from the use of the word "falsely." The Chief Judge apparently agrees with this concept, for he interprets "falsely" to mean a specific intent to defraud or something very close to it, although he affirms the decision of the board of review on the basis that the court members were adequately instructed concerning the particular element involved. While I agree with the result he reaches, I cannot join in the subsidiary conclusion that the statute requires more than the unauthorized intentional making of a pass containing false information.

Title 18, United States Code, § 499, supra, is contained in the chapter dealing with counterfeiting and forgery. It provides as follows:

"Whoever falsely makes, forges, counterfeits, alters, or tampers with any naval, military, or official pass or permit, issued by or under the authority of the United States, *or with intent to defraud uses or possesses* any such pass or permit, *or personates or falsely represents himself* to be or not to be a person to whom such pass or permit has been duly issued, *or willfully allows any other person to have or use any such pass or permit,* issued for his use alone, shall be fined not more than $2,000 or imprisoned not more than five years, or both." [Emphasis supplied.]

A reading of the statute's terms indicates clearly that it is possible to commit a pass offense thereunder in one of four ways—by falsely making a pass; by using or possessing a false pass with intent to defraud; by willfully allowing the use of a pass by another; and by impersonating the person to whom a pass has been duly issued. Moreover, the use of the alternative conjunction "or" immediately preceding the phrase "with intent to defraud" establishes that the latter was intended only to affect the use or possession of any such pass or permit. Thus, it is clear that if the accused is to succeed here, he must do so as the result of his interpretation of the term "falsely."

It may be true, as the Chief Judge argues, that the word "falsely" has been held to mean more than the intentional statement of an untruth. However, as he concedes, its definition depends upon the statute in which it is used. United States v Ariola, 2 USCMA 637, 10 CMR 135; 16 Words and Phrases (Perm ed) 134, et seq. Here, it is clear that the evil Congress sought to eliminate is the reproduction, possession, and use of military documentation which may serve as a means of entrance and egress from our defense installations. It can be contended, therefore, and I believe successfully, that Congress desired to prohibit the production of passes which were false in fact. Thus, we should accord to the language it used an interpretation fairly consonant with this legislative purpose, *i.e.,* that "falsely" means no more than the intentional, unauthorized making of a pass including materially untrue information. This is consistent with the judicial interpretation of similar statutes relating to the false making of United States coins and obligations. There, the legislative purpose was to insure the genuineness of our coin and currency. In United States v Otey, 31 Fed 68 (CC D Ore) (1887), the defendant made the same argument concerning the term "falsely" as is presented here. In disposing of this contention, Judge Deady stated, at page 71:

"After a careful examination of the statute and the subject, I am convinced, contrary to my first impression, that the knowledge and intent to defraud mentioned in section 5457 of the Revised Statutes refer only to the crime of passing counterfeit money, or having the same in possession; and therefore an indict-

ment for counterfeiting need contain no averment on the subject. *And the very fact that the qualification of knowledge and intent to defraud is expressly stated twice in the section, in the same words, in the definition of the crimes of passing and possessing counterfeit coin, and not in the definition of the crime of counterfeiting it, shows plainly that it was not the intention of congress to make these circumstances an element of the latter crime.* [Emphasis supplied.]

See also Kaye v United States, 177 Fed 147 (CA 7th Cir) (1910), and United States v Russell, 22 Fed 390 (CC D Mass) (1884).

I am of the view that the reasoning employed in United States v Otey, supra, is equally applicable to the provisions of 18 USC § 499, supra. Indeed, if Congress intended to include a specific intent to defraud or its equivalent as an element of the false making of an official pass, it is strange that they employed language restricting that requirement to other offenses denounced in the Act. In this respect, Judge Deady's remarks are peculiarly suitable. Hence I reject the contention that the legislature's use of the term "falsely" imports any requirement of a specific intent or similar concept into the offense. It follows that I deem the law officer's instructions on the maximum sentence proper. Accordingly, I join in the result reached by the Chief Judge.