UNITED STATES, Appellee

v.

Jennifer A. JAMES, Airman First Class
U.S. Air Force, Appellant.

No. 94–0001.
CMR No. 30346.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 15, 1994.

Decided Aug. 23, 1995.

For Appellant: *Colonel Jay L. Cohen* (argued); *Captain Richard D. Desmond* (on briefs); *Captain Ursula P. Moul.*

For Appellee: *Captain R. Scott Howard* (argued); *Colonel Thomas E. Schlegel, Colonel Jeffery T. Infelise, Major John H. Kongable* (on briefs).

*Opinion of the Court*

SULLIVAN, Chief Judge:

1. Appellant was tried by a general court-martial composed of a military judge alone at Griffiss Air Force Base, New York, on November 9, 1992. She pleaded guilty to absence without leave; forgery of an indorsement signature on AF Form 988, Aug. 86; and uttering worthless share drafts (6 specifications), in violation of Articles 86, 123, and 123a, Uniform Code of Military Justice, 10 USC §§ 886, 923, and 923a, respectively. She was sentenced to a bad-conduct discharge, confinement for 7 months, partial forfeitures, and reduction to airman basic. The convening authority approved this sentence on December 22, 1992. The Court of

Military Review [1] affirmed without opinion on August 24, 1993.

2. On February 9, 1994, this Court specified review on the following issue:

WHETHER APPELLANT'S PLEA OF GUILTY TO THE SPECIFICATION UNDER CHARGE III (FORGERY) IS IMPROVIDENT BECAUSE THE SPECIFICATION DOES NOT STATE AN OFFENSE GREATER THAN MAKING A FALSE PASS UNDER ARTICLE 134 [, UCMJ, 10 USC § 934].

We hold that the challenged specification states an offense greater than wrongfully making a false pass, in violation of Article 134, and that appellant's pleas of guilty to forgery under Article 123 were provident. *See United States v. Taylor*, 9 USCMA 596, 26 CMR 376 (1958); *United States v. Addye*, 7 USCMA 643, 23 CMR 107 (1957).

3. Appellant pleaded guilty to and was found guilty of forging an officer's signature on an official Air Force form, in violation of Article 123. The forgery specification states:

Specification: In that [appellant] did, at Griffiss Air Force Base, New York, on or about 7 July 1992, with intent to defraud, falsely make the signature of Lieutenant Colonel Paul B. Christianson as an indorsement to a certain Air Force Form 988, Aug 86, Leave Request/Authorization which said form would, if genuine, apparently operate to the legal harm of another.

4. In support of her pleas of guilty to forgery in violation of Article 123, appellant submitted a stipulation of fact which states in pertinent part as follows:

[ (2) ] On or about 27 April 1992, the accused submitted an AF Form 988 (hereafter "original form") to her unit orderly room *requesting terminal leave for the period 13 July 1992 to 6 August 1992*. The leave form requires that "you must be available to be contacted through the address shown on your leave authorization (AF Form 988, Part II, instruction number 6) (EXHIBIT 2). The accused provided her parent's address and telephone number in block 15 of the original form: [omit-

ted], and then signed the form acknowledging that she read the instructions on Part II (EXHIBIT 3). The original form was signed by her commander, Lt Col Paul B. Christianson on 29 April 1992. AF Form 988, Part I, cannot be turned in to Accounting and Finance until 14 days prior to leave because a leave authorization number cannot be assigned until then. *When A1C James took the original form to finance they corrected blocks 10 and 11 to read "15" July 92, as* the accused would not accrue sufficient leave days before her separation.

[ (3) ] At sometime between 27 April 1992 and 7 July 1992 the accused decided to travel to Germany to visit her boyfriend. On or about 7 July 1992, the accused approached her unit leave program administrator, Ms Kathleen Calvani, stating that her original leave form was lost and that she needed another leave form (hereafter "second form" (EXHIBIT 4 and 5).

[ (4) ] On the accused's 7 July 1992 visit to the orderly room for the second leave form, A1C James told Ms. Calvani that her original leave form had a leave start date of 13 July 1992. Ms. Calvani contacted the Accounting and Finance Office and was informed that her earliest leave start date was 15 July 1992. *Ms. Calvani filled out the new form reflecting a leave start date of 15 July 1992. The accused took the second form and, later, willfully altered the leave start dates on the form (AF Form 988, blocks 10 and 11) by lining out the dates "15" and inserting the dates "13" July 1992. She initialled the change using her initial, "JJ"*.

On 8 November 1992, the accused told her attorney, *for* the first time, that rather than making the signature herself, *she encouraged John Price to falsely make the signature of her commander, Lt Col Paul B. Christianson, as the approval authority* (EXHIBIT 6). John Price is no longer on active duty. The signature if genuine would have operated to the harm of the Air Force. A1C James encouraged the false signature to be made with the intent

1. *See* 41 MJ 213, 229 n. * (1994).

to defraud the Air Force *by circumventing space available sign up procedures.*

[ (5) ] On 12 July 1992, the accused departed Griffiss Air Force Base with the intent to go overseas to Germany. She had told her direct supervisor, Sgt Kyle White, and NCOIC, TSgt John Green, that she was going to Germany during her terminal leave; however, she failed to provide an address or telephone number through which she could be contacted in Germany. On 30 July 1992, the acting first sergeant, MSgt Jonathan R. Haas, telephoned the number on the accused's original leave form (EXHIBIT 7). He talked to the accused's mother and the mother responded that she did not know where the accused was or how to contact her. MSgt Haas then received a phone call from an individual identifying herself as the accused's sister. The sister related that she didn't know how to contact the accused but that she was in Germany as she had sent a postcard of the Ramstein Billeting office with a Ramstein AB APO postmark. SSgt David P. Lydon, 416 SPS/SPOLI, called the billeting office and they had no record of A1C James ever being registered there (EXHIBIT 8). The accused knew that she could not be located at the address and number provided on both the original and second AF Form 988 and left no instructions, forwarding address, forwarding telephone number, or any other means to be contacted with her parents at the Thomasville, Georgia address.

[ (6) ] A1C James learned it was possible to catch a space available flight from Dover AFB, Delaware, to Germany, and that generally the best day to catch such a flight was on Mondays. *The accused knew that she needed an AF Form 988, Part II, that reflected a leave start date of 13 July 1992 in order to sign up for space available travel on Monday, 13 July 1992. The Separations Office, 416 MSS/MSPPR, required a copy of the terminal leave form, AF Form 988, to outprocess her from Griffiss AFB. The accused offered her copy of the second form to both the 416 MSS/MSPPR, Separations Office and the Dover AFB passenger service terminal (EXHIB-IT 9).* The second leave form was incorporated into the Separations Office filing system.

[ (7) ] On Sunday, 12 July 1992, the accused, without authorization, absented herself from her unit and Griffiss AFB and proceeded to Dover AFB with Sgt Marcellus V. Beasley (EXHIBIT 10). Due to an inability to secure a military space available flight, both A1C James and Sgt Beasley returned to the Rome, New York, area on 16 July 1992. In order to travel to Germany, the accused, on 16 and 18 July, then wrongfully and unlawfully uttered 2 share drafts on an Up State Federal Credit Union closed account, numbered 336301010, to Trans World Airlines in the total amount of $1,017.97 to pay for airline tickets to and from Germany (EXHIBIT 11). The accused flew to Germany from Hancock International Airport, Syracuse, New York, on 18 July 1992. A1C James neither returned to military control while in Central New York nor while in Europe. She returned to Griffiss AFB and reported to her unit on 9 August 1992.

(Emphasis added.)

---

5. Prior to her trial, appellant unsuccessfully made a motion to dismiss the forgery specification under Charge III. Defense counsel asserted that it failed to allege extrinsic facts showing the "legal harm" which could be caused by the allegedly falsely signed Air Force Form 988, Aug. 86 (*see* Appendix). This Court has long held that "[n]ot every writing containing false information or a false signature is a proper subject for a forgery charge. It must appear the writing has apparent efficacy to create, discharge, transfer, or otherwise affect a legal right or liability." *United States v. Whitson,* 14 USCMA 324, 326, 34 CMR 104, 106 (1963); *see United States v. Phillips,* 14 USCMA 620, 623, 34 CMR 400, 403 (1964). Thus, our concern in this case is whether the Air Force Form alleged to be falsely signed in this case is no more than a military pass which has no apparent efficacy with respect to any legal rights and whose false signing is

usually prosecuted under Article 134.[2] *See generally United States v. Thomas*, 25 MJ 396 (CMA 1988).

6. Article 123 provides:

Any person subject to this chapter who, with intent to defraud—

(1) falsely makes or alters any signature to, or any part of, *any writing* which would, if genuine, *apparently impose a legal liability on another or change his legal right or liability to his prejudice*; or

(2) utters, offers, issues, or transfers such a *writing*, known by him to be so made or altered;

is guilty of forgery and shall be punished as a court-martial may direct.

(Emphasis added.)

The maximum authorized punishment for this offense is a dishonorable discharge, 5 years' confinement, and total forfeitures. *See* para. 48e, Part IV, Manual for Courts–Martial, United States, 1984.

7. Falsely making a military pass is also a well-recognized offense under Article 134. Paragraph 77b(1), Part IV of that Manual explains its elements as follows:

(1) *Wrongful making, altering, counterfeiting, or tampering with a military or official pass, permit, discharge certificate, or identification card.*

(a) That the accused wrongfully and falsely made, altered, counterfeited, or tampered with a certain military or official pass, permit, discharge certificate, or identification card; and

(b) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

The maximum authorized punishment for falsely making a military pass is a dishonorable discharge, 3 years' confinement, and total forfeitures. *See* para. 77e(1). In light of the lesser authorized punishment, an accused might benefit if his false-signing conduct was charged as false making of a military pass under Article 134 rather than forgery under Article 123. *See also* 18 USC § 499 (forging a military pass authorizes 5 years' confinement) and RCM 1003(c)(1)(B)(ii), Manual, *supra.*

8. We note that there are several Court of Military Review decisions which hold that a military identification card is not a proper subject of forgery under Article 123. *See United States v. Walker*, 27 MJ 878, 879 (ACMR 1989); *United States v. Davis*, 4 MJ 752, 755 (AFCMR 1978). We also note that a military pass to a limited extent is like a military identification card; and, as noted above, its false making is usually prosecuted under Article 134. *See United States v. Oakley*, 11 USCMA 529, 532–33, 29 CMR 345, 348–49 (1960); *United States v. Karl*, 3 USCMA 427, 431, 12 CMR 183, 187 (1953) (pass offenses erode morale and discipline by undermining liberality and equality in granting privileges to soldiers). *See also United States v. Warthen*, 11 USCMA 93, 28 CMR 317 (1959) (forgery of military pass prosecuted under Article 134). Nevertheless, we need not decide today whether a military pass can be a proper subject for a forgery prosecution under Article 123. *But see United States v. Wilcox*, 18 CMR 451, 454 (CGBR 1955) (military pass a proper subject of forgery, although punishment limited to Manual punishment for pass offense).

9. AF Form 988, Aug 86, a "Leave Request/Authorization" is not a military pass, and it states on its face that its principal purpose is "to authorize military leave." [3] In this regard, we note that, although a service-

---

2. Older military authorities apparently concluded that the false signing of a military pass should not be prosecuted as forgery at a court-martial. *See* G. Davis, *A Treatise on The Military Law of The United States* 454 (3d ed. rev. 1913); *see* J. Snedeker, *Military Justice Under the Uniform Code* 922 (1953). However, such conduct could always be prosecuted as a military-disorder offense and, after 1918, as a violation of 18 USC § 499. *See generally* W. Winthrop, *Military Law and Precedents* 732 (2d ed. 1920 Reprint); *United*

States v. Birch, 470 F.2d 808 (4th Cir.1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973). *See generally United States v. Warthen*, 11 USCMA 93, 28 CMR 317 (1959).

3. The following language of Air Force Regulation (AFR) 35–9 (1 October 1986) makes clear that a pass and leave are not equivalent:

5–1. **Purpose.** A pass, as differentiated from leave, is an authorized absence from duty sta-

member is entitled to 2 1/2 days of leave per month by statute (see 10 USC § 701), the servicemember may only take leave in accord with "regulations prescribed by the Secretary concerned or his designated representative." 10 USC § 704.[4] Moreover, a servicemember "who is absent without leave or over leave" immediately "forfeits all pay and allowances for the period of that absence unless it is excused as unavoidable." 37 USC § 503. See generally Thomas v. Cheney, 925 F.2d 1407 (Fed.Cir.), cert. denied, 502 U.S. 826, 112 S.Ct. 93, 116 L.Ed.2d 65 (1991). Finally, under Air Force Regulations, a servicemember must be on leave in order to register for use of space available (space A) transportation.[5]

■ 10. From the above, it is clear that this form, when signed by the appropriate

commander, is an instrument which apparently perfected appellant's right to take leave and use free military travel. See United States v. Taylor, 9 USCMA at 600–01, 26 CMR at 380–81; United States v. Addye, 7 USCMA at 645, 23 CMR at 109. Consideration of the statute and regulations controlling the use of the form is critical in this regard. See United States v. Addye, 7 USCMA at 645, 23 CMR at 109; United States v. Strand, 6 USCMA 297, 302, 20 CMR 13, 18 (1955). Accordingly, we conclude that an Air Force Form 988, Aug. 86, falsely signed for a military officer, is a proper subject of forgery. Id. See also United States v. Bell, 34 MJ 937, 945 (AFCMR 1992), pet. denied, 38 MJ 436 (1993).

■ 11. Admittedly, appellant's forgery specification does not particularly allege ex-

---

tion, granted for a relatively short period, to provide respite from the working environment or for other specific reasons. Such authorized absences are not chargeable as leave.

4. AFR 35–9 (1 October 1986) states:
**SECTION A—STATUTORY AUTHORITY, ENTITLEMENT, AND POLICY**
1–1. Statutory Authority. Leave for members of the Armed Forces is governed by 10 USC 701, 702, 703, 704, 705, 706, and 876a. Pay and allowances provisions pertaining to leave status are governed by 37 USC 501, 502, 503, 504, and 10 USC 707. Payment for certain periods charged as excess leave when a court-martial sentence to dismissal or discharge is set aside or disapproved is governed by 10 USC 707.
1–2. General:
a. Members accrue 2 1/2 calendar days leave with pay and allowances for each month of active duty (see paragraph 1–4), except as listed in paragraph 1–33. The entitlement to leave is a right and should only be denied for military necessity.
b. No member is placed in an involuntary leave status for the convenience of the government. If, however, a member requests an extension of leave solely for personal convenience (for example, awaiting receipt of family member's passports or visas, awaiting outcome of request for humanitarian reassignment and so on), leave is properly chargeable.
1–3. Policy Concerning Granting of Leave:
a. Vacations from duty are essential to the morale and motivation of Air Force members. Lengthy respites from the work environment tend to have a beneficial effect on an individual's psychological and physical status. Weekend absences or short periods of leave do not normally afford a similar degree of relief. Air

Force members are encouraged to use their entire 30 days leave each year and should be given opportunity to take at least one leave period of 14 consecutive days or more per year. In providing this entitlement, Congress intended that leave be used as accrued and not be viewed as an extra money program. Although Congress provided compensation for members who are unable to use their leave because of military requirements, it is Air Force policy that large leave balances shall not be accrued expressly for settlement on release from active duty.
b. All commanders must establish annual leave programs for their units. They should develop positive programs to encourage the use of leave, not only for maximum benefit of the member, but also to prevent loss of leave at year end balancing, retirement, or separation. . . .

5. AFR 35–9 clearly establishes authorized leave as a precondition to space available transportation:
4–4. Travel. The member who is performing the travel is responsible for making own transportation arrangements. Space available accommodations for leave travel via DOD-owned or-controlled aircraft can be difficult to obtain and may be available only to intermediate or adjacent destinations. It is imperative that personnel attempting to travel on a space available basis have sufficient funds to defray travel expenses via commercial means and to cover the cost of hotel accommodations when delayed or when accommodations on DOD-owned or-controlled aircraft are unobtainable. If members use space-available transportation on DOD-owned or-controlled aircraft, they must be on leave when they register for such transportation (see DOD 4515.13R).

trinsic facts which would establish how this falsely signed form could be or was in fact used to affect the *legal* rights *of another.* *See United States v. White,* 35 MJ 154 (CMA 1992). *Cf. United States v. Farley,* 11 USC-MA 730, 732, 29 CMR 546, 548 (1960). For example, it contains no allegation that this form determines a servicemember's rights to space-A travel and was used for this purpose by appellant. However, the specification does allege that an official numbered Air Force Form was falsely signed; it was further alleged to be a request and authorization for leave; and finally, it was alleged that this form provided for the indorsement of a military officer. Moreover, the above-noted statutes and service regulations showing legal efficacy are all specifically referenced in the Air Force Form 988, Aug. 86. (See appendix.) *See United States v. Addye,* 7 USCMA at 645, 23 CMR at 109, *cited with approval* in *United States v. Farley,* 11 USC-MA at 732, 29 CMR at 548. Accordingly, on this basis we conclude that the challenged specification as worded was legally sufficient. *See also United States v. White, supra; see generally United States v. Strand,* 6 USCMA at 302, 20 CMR at 18.

12. Turning to the record in appellant's case, we note that she pleaded guilty to

forgery and generally admitted this form had legal efficacy with respect to a commander's duty to account for his troops and the Air Force's right to regulate the taking of leave. A blank AF Form 988, Aug. 86 (Pros Ex. 2); the initial AF Form 988, Aug. 86, AFO copy and unit copy, corrected by Personnel and properly signed by appellant's commander (Pros. Ex. 3a & b) and the second AF Form 988, Aug. 86, Member's copy altered and falsely signed (Pros.Ex. 4) are all part of this record.[6] In addition, appellant admitted that she needed an approved leave form signed by her commander to secure Space A flight or standby status at Dover Air Force Base, Delaware. In a guilty-plea case, such record is more than sufficient to establish the legal efficacy of the AF Form 988, Aug. 86. *Cf. United States v. Carter,* 24 MJ 280, 281–82 (CMA 1987) (evidence showed that forged document was material means to achieve reenlistment and, as a result thereof, receive a substantial bonus).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.

---

6. This case is distinguishable from *United States v. Phillips,* 14 USCMA 620, 34 CMR 400 (1964), which dealt with the false signing of a carbon copy of an Allotment Authorization. Appellant was charged with forgery of Lieutenant Colonel Christianson's signature on the Leave Request/Authorization and admitted that she had his signature falsely signed on all three pages of the form.

APPENDIX

| LEAVE REQUEST/AUTHORIZATION | | SECTION I | | |
|---|---|---|---|---|
| (See Privacy Act Statement and General Instructions below) | TO: ACFP | 1. DATE OF REQUEST | 2. TYPE OF TRANSACTION (1-5) (AFO Use Only) | |

| 3 CURRENT LV BALANCE | 4. GRADE | 5. SSN (6-14) | 6 NAME (Last, first, MI) (15-19) | | |
|---|---|---|---|---|---|

**7. TYPE OF LEAVE** (Check one)

- ☐ Ordinary (A)
- ☐ Convalescent (F)
- ☐ Terminal (P)
- ☐ Emergency (D)
- ☐ Special (H)
- ☐ Appellate Review (R)
- ☐ Reenlistment (E)
- ☐ Graduation (J)
- ☐ Other (Specify)

| 8 NO DAYS REQUESTED (33-35) | 9 LEAVE AUTH NO. (37-43) | 10. FIRST DAY/TIME OF LV STATUS | 11. FIRST DAY OF CHARGEABLE LV (47-52) | 12. LAST DAY OF CHARGEABLE LV (53-58) |
|---|---|---|---|---|

| 13. LEAVE AREA (36) ☐ CONUS ☐ OS ☐ OS to CONUS | 14. EMERGENCY PHONE | 15. LEAVE ADDRESS (STREET, CITY, STATE, ZIP CODE & PHONE) |
|---|---|---|

16 LEAVE IN CARE OF·

| 17 DUTY PHONE | 18. UNIT | 19 DUTY SECTION | 20. DUTY LOCATION |
|---|---|---|---|

LEAVE REQUEST CERTIFICATION: I acknowledge that the leave requested by me will be charged against my leave account unless otherwise cancelled or corrected through Part III of this form. In addition, if I cannot earn enough leave before separation to cover this request, I agree to withholding pay and allowances from my pay before discharge for the unearned leave taken. I have read the instructions on Part II.

| 21 MEMBER'S SIGNATURE | 22. SUPERVISOR'S TYPED/PRINTED NAME AND GRADE | |
|---|---|---|
| 23. SUPERVISOR'S SIGNATURE | 24. SUPERVISOR'S DUTY PHONE | 25 DATE OF APPROVAL |

**SECTION II** (To be completed by supervisor / unit commander to authorize advance or excess leave)

| 26 LEAVE AVAILABLE TO ETS (From LES) | 27 ADVANCE LEAVE REQUESTED (Block 8 minus 3) | 28 EXCESS LEAVE REQUESTED (44-48) (Block 8 minus 26) | 29 TOTAL LEAVE APPROVED |
|---|---|---|---|
| 30 UNIT HEADQUARTERS | 31. COMMANDER'S SIGNATURE/GRADE | | 32 DATE OF AUTHORIZATION |

### PRIVACY ACT STATEMENT
AUTHORITY: 10 U.S.C. chapter 40; 37 U.S.C. chapter 9; and EO 9397.
PRINCIPAL PURPOSE(S): To authorize military leave, document the start and stop of such leave; record address and telephone number where you may be contacted in case of emergency during leave; and certify leave days chargeable to you.
ROUTINE USES: To update your military leave and pay records. Information furnished may be disclosed to DOD officials / employees who need this information to perform their duties; to federal, state, and local law enforcement authorities in appropriate cases; the American Red Cross; and your relatives. The social security number (SSN) is used for positive identification.
DISCLOSURE IS VOLUNTARY. Disclosure of SSN is voluntary. However, this form will not be processed without your SSN, since the Air Force identifies members by SSN for pay or leave purposes.

### GENERAL INSTRUCTIONS
(For emergency, reenlistment, convalescent, terminal, and appellate review leaves, see variations in AFM 177-373, volume II, chapter 7.)
1. THIS FORM MUST BE TYPED OR COMPLETED IN INK.
2. BEFORE SEPARATING PARTS I, II, AND III, COMPLETE THE FOLLOWING BLOCKS:
   a. Blocks 1 and 2, 4 thru 8, and 11 thru 25 are self-explanatory.
   b. Block 3 - Current Leave Balance. Verify that the member has enough leave balance to cover the period of leave requested. This may be done by checking the member's LES or the orderly room's leave balance listing.
   c. Block 9 - Leave Authorization Number. Supervisor or designee gets a leave authorization number from the unit orderly room immediately before forwarding Part I to the AFO. Do not get leave number earlier than 14 days before the leave effective date.
   d. Block 10 - First Day of Leave Status. If member is using space available transportation, this block must reflect the date the member signs up for Space A. Otherwise, this block must reflect the day the member actually departs on leave. Please note that leave status is not necessarily chargeable leave. (Authority: AFR 35-9, table 1-1).
   e. Blocks 26-32. Complete only to authorize advance or excess leave. Blocks are self-explanatory except for Blocks 27 and 28.
      (1) Advance Leave (Block 27). If the requested leave exceeds the current balance but does not exceed the balance to ETS, the leave is advance leave. Complete Blocks 26 -27 and forward the form (all parts) to the unit commander for approval. If a member requesting leave has a cumulative advance balance of 45 days, comply with AFR 36-9, paragraph 1-6.
      (2) Excess Leave (Block 28). If the requested leave exceeds the balance to ETS, the leave is excess leave. Complete Blocks 26 and 28 and forward the form (all parts) to the unit commander for approval.
3. AFTER INITIALLY COMPLETING THIS FORM:
   a. Separate Part I immediately after signing and getting a leave authorization number. Forward to the AFO using normal distribution unless the leave is terminal/separation, or involves excess or advance leave. Forward these requests (all parts) to the unit for approval.
   b. Separate Part II and give to member.
   c. Hold Part III for completion after the member's return from leave. If member requests cancellation before any leave has been taken, complete section II of Part III and forward to your unit commander.
4. INSTRUCTIONS FOR COMPLETING AND PROCESSING PART III ARE PRINTED ON PART III.
5. GUIDELINES FOR CHARGING LEAVE AND INSTRUCTIONS FOR LEAVE ADJUSTMENTS AND EXTENSIONS ARE PRINTED ON PART III.

AF Form 988, AUG 86        Prosecution Exhibit _2_ for I.D.        AFO'S COPY PART I
                                      off 20    Adm 33

# LEAVE REQUEST/AUTHORIZATION
*(See Privacy Act Statement and General Instructions below)*

**SECTION I**

| TO: ACFP | 1. DATE OF REQUEST | 2. TYPE OF TRANSACTION (1-5) (AFO Use Only) |
|---|---|---|

| 3. CURRENT LV BALANCE | 4. GRADE | 5 SSN (6-14) | 6. NAME (Last, first, MI) (15-19) |
|---|---|---|---|

**7. TYPE OF LEAVE (Check one)**

- [ ] Ordinary (A)
- [ ] Convalescent (F)
- [ ] Terminal (P)
- [ ] Emergency (D)
- [ ] Special (H)
- [ ] Appellate Review (R)
- [ ] Reenlistment (E)
- [ ] Graduation (J)
- [ ] Other (Specify)

| 8. NO DAYS REQUESTED (33-35) | 9. LEAVE AUTH NO. (37-43) | 10 FIRST DAY/TIME OF LV STATUS | 11. FIRST DAY OF CHARGEABLE LV (47-52) | 12. LAST DAY OF CHARGEABLE LV (53-58) |
|---|---|---|---|---|

**13 LEAVE AREA (36)**   [ ] CONUS   [ ] OS   [ ] OS to CONUS

| 14. EMERGENCY PHONE | 15. LEAVE ADDRESS (STREET, CITY, STATE, ZIP CODE, & PHONE) |
|---|---|

**16. LEAVE IN CARE OF**

| 17. DUTY PHONE | 18 UNIT | 19 DUTY SECTION | 20. DUTY LOCATION |
|---|---|---|---|

*LEAVE REQUEST CERTIFICATION: I acknowledge that the leave requested by me will be charged against my leave account unless otherwise cancelled or corrected through Part III of this form. In addition, if I cannot earn enough leave before separation to cover this request, I agree to withholding pay and allowances from my pay before discharge for the unearned leave taken. I have read the instructions on Part II.*

| 21 MEMBER'S SIGNATURE | 22 SUPERVISOR'S TYPED/PRINTED NAME AND GRADE |
|---|---|

| 23 SUPERVISOR'S SIGNATURE | 24 SUPERVISOR'S DUTY PHONE | 25 DATE OF APPROVAL |
|---|---|---|

## SECTION II (For member's use to record data for a leave originating outside CONUS)

| DATE/TIME DEPART PERM DUTY STATION | DATE/TIME RETURN PERM DUTY STATION | DATE DEPART DESG PAY AREA | DATE ARR CONUS | DATE DEPART CONUS | DATE RETURN DESG PAY AREA |
|---|---|---|---|---|---|

### INSTRUCTIONS FOR MEMBERS DEPARTING ON LEAVE

1. Before you depart on leave, you should complete DD Form 2258, Temporary Mail Disposition Instructions, at the Postal Service Center, to direct your mail during your leave.

2. If you take more leave than you will accumulate before expiration of your term of service (ETS), the AFO immediately collects all pay and allowances you receive during the period of excess leave. Advance leave which becomes excess leave at your ETS is collected the day before you enter into an extension, or on your date of separation, whichever occurs first, without regard to any extension or adjusted date of separation(DOS).

3. Remember:
   a. Your leave is normally effective on the date you include in your leave request as "first day of chargeable leave."
   b. If you want to change your starting or projected return date before departing on leave you must notify the leave-approving authority.
   c. When you sign up for space-available transportation, you have started a period of leave. Once space-available travel has been signed for, leave is charged according to the table on Part III (Authority: AFR 35-9, table 1-1).

4. You must be in the local area of your permanent duty station before start, and upon completion of leave. Local area is defined as the place of residence or home from which the member commutes to the duty station on a daily workday basis.

5. Before departure, you must have an approved leave authorization (AF Form 988, Leave Request/Authorization), or special order and enough funds for expenses, including costs for travel. Do not assume you can return on time by military air transportation.

6. You must be available to be contacted through the address shown on your leave authorization. Members with key mobility deployment responsibilities must notify their unit mobility officer/NCO or alternate of scheduled leave as soon as possible before departure.

7. If you need an extension of leave, call or send a telegram to the individual who approved your leave. If you are on emergency leave, ask the nearest American Red Cross chapter to verify the continuing emergency to the leave-approving authority.

8. If you require medical or dental treatment while on leave, go to the nearest uniformed services treatment facility. If you must be treated for an emergency at a civilian facility, instruct the civilian source of care to submit a claim for payment to the nearest Air Force medical treatment facility (Resource Management Office). The claim must be itemized, including diagnosis, your pay grade, military address, and SSN.

   a. If you are hospitalized in a military medical treatment facility, ensure that your organization of assignment is notified as soon as possible.
   b. If you are hospitalized in a civilian facility, notify the nearest Air Force medical treatment facility (Patient Affairs Office) as soon as possible.

9. If you are in need of funds, go to the nearest Air Force finance office and show your leave orders and current Leave and Earnings Statement (LES). Payment, if authorized, cannot exceed unpaid pay and allowances to date. If you do not have your LES, you may expect a delay.

10. Observe all traffic rules if you travel by automobile.

11. If you plan to travel by commercial air at reduced rates, contact the airline to learn what documents you need.

12. It is your responsibility to return to your permanent duty station before expiration date of your leave.

13. If travelling by DOD-owned aircraft, MAC contract flights, or commercial air, you must comply with dress requirements according to AFR 35-10, table 1-30.

14. Personnel possessing a DD Form 714, Meal Card, must not use the meal card while on leave.

15. You must meet all appointments while on leave or reschedule the appointments before departure.

**AF Form 988, AUG 86**    PREVIOUS EDITIONS ARE OBSOLETE    MEMBER'S COPY PART II   2a

## LEAVE REQUEST/AUTHORIZATION
*(See Privacy Act Statement and General Instructions below)*

| | SECTION I | | |
|---|---|---|---|
| TO: ACFP | 1. DATE OF REQUEST | 2. TYPE OF TRANSACTION (1-5) (AFO Use Only) |

| 3. CURRENT LV BALANCE | 4. GRADE | 5. SSN (6-14) | 6. NAME (Last, first, MI) (15-19) |
|---|---|---|---|
| | | | |

**7. TYPE OF LEAVE** (Check one)

- ☐ Ordinary (A)
- ☐ Convalescent (F)
- ☐ Terminal (P)
- ☐ Emergency (D)
- ☐ Special (H)
- ☐ Appellate Review (R)
- ☐ Reenlistment (E)
- ☐ Graduation (J)
- ☐ Other (Specify)

| 8. NO. DAYS REQUESTED (33-35) | 9. LEAVE AUTH NO. (37-43) | 10. FIRST DAY/TIME OF LV STATUS | 11. FIRST DAY OF CHARGEABLE LV (47-52) | 12. LAST DAY OF CHARGEABLE LV (53-58) |
|---|---|---|---|---|
| | | | | |

| 13. LEAVE AREA (36) ☐ CONUS ☐ OS ☐ OS to CONUS | 14. EMERGENCY PHONE | 15. LEAVE ADDRESS (STREET, CITY, STATE, ZIP CODE, & PHONE) |
|---|---|---|

16. LEAVE IN CARE OF.

**SECTION II** *(To be completed upon member's return from leave or cancellation)*
*(Use to record data for leave originating outside CONUS )*

| DATE/TIME DEPART PERM DUTY STATION | DATE/TIME RETURN PERM DUTY STATION | DATE DEPART DESG PAY AREA | DATE ARR CONUS | DATE DEPART CONUS | DATE RETURN DESG PAY AREA |
|---|---|---|---|---|---|
| | | | | | |

**SUPERVISOR:** How did member's actual leave compare to the leave reported in Blocks 11 and 12 above?

| A | CHECK ONE AND COMPLETE DESIGNATED SUBSECTIONS | No Change ☐ | Complete subsections C, D, and E only | Should be corrected ☐ | Complete subsections B thru E | Should be cancelled ☐ | Complete subsection E only |
|---|---|---|---|---|---|---|---|
| B | CORRECT LEAVE DATES ARE AS FOLLOWS: | FIRST DAY OF CHARGEABLE LV | | LAST DAY OF CHARGEABLE LV | | NO OF DAYS TAKEN | |

| C | Space A transportation was used/not used  (Circle one.) If Space A transportation was used, it was signed up for on _____ (date) |
|---|---|

| D | THIS IS A TRUE AND CORRECT STATEMENT OF LEAVE TAKEN, I make this statement with the full knowledge of the penalties for willfully making a false statement. Intentional misstatements or omissions of facts constitute federal criminal violations (Maximum penalties: $10,000 fine or 5 years imprisonment, or both  18 U.S.C. 1001  Also see Article 107 UCMJ ) | MEMBER'S SIGNATURE |
|---|---|---|

| E | In consideration of the last duty day before starting leave and the first day after return from leave, or member's cancellation request, and including all other information available, I certify the above days of leave used, or cancelled, are true and correct to the best of my knowledge and belief (See below for computing chargeable items.) |
|---|---|

| SUPERVISOR'S PRINTED / TYPED NAME, GRADE, AND PHONE NUMBER | SUPERVISOR'S SIGNATURE |
|---|---|

**INSTRUCTIONS FOR CHARGING LEAVE**          Examples: Using a normal work schedule of Monday through Friday, 0730 to 1630.

| If the member | and has performed over 50 percent of scheduled duty | | on a nonduty day | then duty status is |
|---|---|---|---|---|
| | Yes | No | | |
| Departs or signs up for space available travel | X | | | Duty |
| | | X | | Leave |
| | | | X | Duty |
| Returns | X | | | Duty |
| | | X | | Leave |
| | | | X | Leave |

1. If the member departs the local area on Tuesday, and if the leave approving authority determines that the majority (over 50 percent) of scheduled duty was performed, Tuesday is a day of duty and Wednesday is the first day of leave.
2. If the member departs the local area on Saturday, regardless of the hour, that day is a day of duty, and Sunday is the first day of leave.
3. If departure from the local area is on Sunday, regardless of the hour, that day is a day of duty and Monday is the first day of leave.
4. If the member returns from leave on Friday, and if the leave approving authority determines that the majority (over 50 percent) of scheduled duty was performed, Friday is a day of duty and Thursday is the last day of leave.
5. If the member returns from leave on Saturday, re-

gardless of the hour, Saturday is a day of leave. This rule also applies if return is on Sunday. (The above examples use Monday through Friday as normally scheduled workdays; however, for members on shift work, equivalent schedules will be arranged though the days of the week vary )

NOTE: When the member signs up for space-available transportation, the member has started a period of leave and it is charged as indicated above (Authority: AFR 35-9, table 1-1).

**LEAVE DATE ADJUSTMENTS AND EXTENSIONS**

1. If the member departs before or after the first day of leave status indicated in Section I of Part I, cancel the original leave request and prepare a new request using a new leave authorization number. Complete Section II of Part III of the original leave request and forward to the unit. Forward Part I of the new leave request to the AFO. Process Part III of the new leave request as normal upon member's return.
2. For an extension of 1 or more days, cancel the original leave and prepare a new request using a new leave authorization number. Process the old and new leave forms as in instruction 1 above.

**INSTRUCTIONS FOR COMPLETING AND PROCESSING PART III**

COMPLETING PART III: Upon member's return from leave or cancellation, complete (separately) Section II of Part III. Determine how the member's actual leave dates compared to the chargeable leave reported to the AFO on Part I. Complete Section II to indicate either "no change", "should be corrected" or "should be cancelled", if member took no leave. IMPORTANT: All periods awaiting space available transportation are chargeable as leave according to normal rules for charging leave (see guidelines for charging leave above).

DISPOSITION OF PART III: After completing Part III, separate and immediately forward to your unit orderly room. If you must alter any Section II data after initially completing, line through and initial the incorrect data or block.

AF Form 988, AUG 86          PREVIOUS EDITIONS ARE OBSOLETE          UNIT COPY  PART III          2b.